DAVID S. STEUER, CA Bar No. 127059
dsteuer@wsgr.com
MICHAEL B. LEVIN, CA Bar No. 172329
mlevin@wsgr.com
MAURA L. REES, CA Bar No. 191698
mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

LUCY YEN, CA Bar No. 224559
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019-6022
Telephone: (212) 999-5800

Attorneys for Defendants
*InterDigital, Inc., InterDigital Communications, Inc., InterDigital Technology Corporation, InterDigital Patent Holdings, Inc., InterDigital Holdings Inc. and IPR Licensing, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

| | |
|---|---|
| U-BLOX AG, U-BLOX SAN DIEGO, INC., AND U-BLOX AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC.; INTERDIGITAL TECHNOLOGY CORPORATION ; INTERDIGITAL PATENT HOLDINGS, INC. ; INTERDIGITAL HOLDINGS, INC.; and IPR LICENSING, INC.,<br><br>Defendants. | No.: 19-cv-00001-CAB-BLM<br><br>**DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>**JURY TRIAL DEMANDED**<br><br>**Hon. Cathy Ann Bencivengo**<br>**Courtroom: 4C**<br>**Date: January 31, 2019**<br>**Time: 10:00 a.m.**<br>**HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY**<br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. STATMENT OF FACTS ..... 2
  A. InterDigital ..... 2
  B. U-Blox and Its Supply Chain ..... 2
  C. History of InterDigital / U-blox Relationship ..... 3
  D. Good Faith Negotiation Pursuant to the ETSI FRAND Commitment ..... 6
III. ARGUMENT ..... 9
  A. Legal Standard ..... 9
  B. The Requested Injunction Would Violate the First Amendment ..... 10
  C. The Requested Injunction Must Be Denied As Vague and Overbroad ..... 13
  D. All of the Preliminary Injunction Factors Weigh Against U-Blox ..... 16
    1. No Likelihood of Success ..... 16
    2. No Irreparable Harm ..... 18
    3. Balance of Equities ..... 22
    4. Public Interest ..... 24
  E. A Bond Would Be Required for Any Injunction ..... 25
IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alexander v. United States*, 509 U.S. 544 (1993)....................................................10

*Allen v. Ghoulish Gallery*, No. 06-cv-371 NLS, 2007 WL 1555739 (S.D. Cal. May 23, 2007) ..............................................................................13

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)...............10

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985)..............................................................................................20, 22

*Bantam Books, Inc. v. Sullivan*, 372 U. S. 58 (1963) .............................................10

*Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ...............................12

*Bell Atl. Bus. Sys. v. Storage Tech. Corp*., No. C-94-0235 MHP, 1994 WL 125173 (N.D. Cal. Mar. 31, 1994).........................................................20

*Brady v. United of Omaha Life Ins. Co*., 902 F. Supp. 2d 1274 (N.D. Cal. 2012) ...............................................................................................................16

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) ...........................................................................................25

*Cal. Pharm. Ass'n v. Maxwell–Jolly*, 563 F.3d 847 (9th Cir.2009) ........................19

*Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668 (9th Cir.1988) .................19

*Castro v. Kailin*, No. EDCV 11-01973 JFW CSS, 2012 WL 209187 (C.D. Cal. Jan. 24, 2012)..................................................................15, 16

*Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800, 2013 WL 3961230 (June 28, 2013)...................................................................7

*Certain Wireless Devices With 4G Capabilities*, Inv. No. 337-TA-868, 2014 WL 2965327 (June 13, 2014)...................................................................8

*Champion-Cain v. MacDonald*, No. 14-cv-3540-GPC-BLM, 2015 WL 4393303 (S.D. Cal. July 15, 2015)........................................................13, 20

*Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846 (9th Cir. 1985)...........................................................................................................19

*Conigliaro v. Yeh*, No. 12-7157 (FSH) (PS), 2012 WL 12882435 (D.N.J. Dec. 17, 2012)......................................................................................14

*De Beers Consol. Mines v. United States*, 325 U.S. 212 (1945) ............................16

*DiMare Fresh, Inc. v. Sun Pac. Mktg. Coop*., No. CIV-F-06-1265 AWI SMS, 2006 WL 2686969 (E.D. Cal. Sept. 19, 2006)...............................21, 22

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ........................................................24

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ........................................10

*Edgar v. Mite Corp*., 457 U.S. 624 (1982) ..........................................................25

*Exeltis USA Inc. v. First Databank, Inc*., No. 17-CV-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21. 2017) ...............................................11, 13

*Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466 (9th Cir. 1984).....................18

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974) ................................................................................14

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt*., 736 F.3d 1239 (9th Cir. 2013)...................................................................................19

*Int'l Medcom, Inc. v. S.E. Int'l, Inc*., No. 15-cv-03839-HSG, 2015 WL 7753267 (N.D. Cal. Dec. 2, 2015) ..........................................17, 22

*Johnson v. Storix, Inc*., No. 3:14-cv-1873-H-BLM, 2015 WL 12532477 (S.D. Cal. Oct. 30, 2015)...........................................................13

*Judkins v. HT Window Fashion Corp*., 529 F.3d 1334 (Fed. Cir. 2008) ................21

*Judkins v. HT Window Fashions Corp*., 514 F. Supp. 2d 753 (W.D. Pa. 2007), *aff'd*, 529 F.3d 1334 (Fed. Cir. 2008)..........................................24

*Klein v. San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ......................................9, 10

*Klinke v. Bannister*, No. 12-CV-00032, 2013 WL 6120437 (D. Nev. Nov. 20, 2013)..............................................................................9

*L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197 (9th Cir. 1980)..................19

*La Marca v. Capella Univ*., No. SACV 05-642-MLG, 2007 WL 9705901 (C.D. Cal. Sep. 28, 2007) ..................................................12

*Latino Officers Ass'n v. City of N.Y.*, 196 F.3d 458 (2d Cir. 1999) ........................13

*List Indus. v. List*, No. 2:17-CV-2159 JCM (CWH), 2017 WL 3749593 (D. Nev. Aug. 30, 2017)..........................................................15, 23, 24

*McDavid Knee Guard, Inc. v. Nike USA, Inc*., 683 F. Supp. 2d 740 (N.D. Ill. 2010) ...........................................................................19, 22

*Microsoft v. Motorola*, 795 F.3d 1024 (9th Cir. 2015)...........................................18

*Mikohn Gaming Corp. v. Acres Gaming, Inc*., 165 F.3d 891 (Fed. Cir. 1998)............................................................................12, 23, 24

*Munaf v. Geren*, 553 U.S. 674 (2008) ...................................................................9

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976)...............................................10, 23

*New York Times Co. v. United States*, 403 U.S. 713 (1971) .................................. 11

*New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071 (C.D. Cal. 2003) ............ 11, 12, 13

*OG Int'l, Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2011 WL 5079552 (N.D. Cal. Oct. 26, 2011) .................................................. 9

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978) .......................................... 12

*Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2017 WL 2903143 (N.D. Cal. July 7, 2017) .................................................. 20

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631 (9th Cir. 2015) .................................................. 16, 17

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rel.*, 413 U.S. 376 (1973) .................................................. 12

*Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905 (S.D. Cal. 2017) .................................................. 10, 20, 24, 25

*Rent-A-Center, Inc. v. Canyon Tel. & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) .................................................. 20

*Schmidt v. Lessard*, 414 U.S. 473 (1974) .................................................. 14

*Sec. Alarm, Fin. Enters., Ltd. P'ship v. Alarm Prot. Tech., L.L.C.*, No. 3:13-cv-00102-SLG, 2015 WL 3459415 (D. Alaska June 1, 2015) .................................................. 20

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ...................................... 24

*Stuhlberg Int'l Sales Co. v. John D. Brush & Co.*, 240 F. 3d 832 (9th Cir. 2001) .................................................. 19, 20

*TCL v. Ericsson*, No. CV 15-2370 JVS, 2018 WL 4488286 (C.D. Cal. Sept. 14, 2018) .................................................. 7, 9

*Thome v. U.S. Food and Drug Admin.*, No. 11-CV-00676-LHK, 2011 WL 856290 (N.D. Cal Mar. 9, 2011) .................................................. 18

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011) ................... 12

*U-Blox AG et al v. Koninklijke Philips N.V.*, 3:18-cv-01627- DMS-JLB, Doc. No. 1 (S.D. Cal. Jul, 18, 2018) .................................................. 7, 8

*Union Pac. R.R. v. Mower*, 219 F.3d 1069 (9th Cir. 2000) .................................... 15

*Vape Soc'y Supply Corp. v. Zeiadeh*, No. 16-01971 AG, 2017 WL 3000020 (C.D. Cal. Jan. 9, 2017) .................................................. 19

*Wajcman v. Stich*, 05cv 1200-LAB, 2006 U.S. Dist. LEXIS 84520 (S.D. Cal. Nov. 17, 2006) .................................................. 13

*Winter v. NRDC, Inc*, 555 U.S. 7 (2008) .................................................. 9, 10, 18, 20

*Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)........................23

**STATUTES**

28 U.S.C. § 1404..................................................................................................4

**RULES**

Fed. R. Civ. P. 65.....................................................................13, 14, 15, 25

**MISCELLANEOUS**

11A Wright & Miller, Federal Practice and Procedure § 2951 (3d ed.) ...................9

Restatement (Second) of Torts, § 773 ......................................................................17

# I. INTRODUCTION

U-blox's meritless TRO application is riddled with inaccuracies. InterDigital has never "threatened" u-blox's customers and has no intention of doing so. Back in 2017, InterDigital provided routine notifications [redacted] At the time, u-blox never suggested to InterDigital that it considered [redacted] to be in any way wrongful or improper. U-blox's newly-minted, litigation-driven characterization [redacted] as "strong arm tactics" and "threats" is baseless. U-blox is simply using this lawsuit as a means to exert leverage in its license negotiations with InterDigital. Meanwhile, InterDigital has continued its good faith efforts to negotiate with u-blox toward a license on FRAND terms and conditions, including through its offer to arbitrate this dispute in order to reach a prompt resolution.

U-blox's motion fails to establish any entitlement to a TRO or preliminary injunction. First and foremost, the requested injunction would constitute a prior restraint of speech in violation of the First Amendment. U-blox seeks to prevent InterDigital from discussing truthful, publicly known facts with its own licensees, which is facially unconstitutional. The proposed injunction is also of such extreme vagueness and overbreadth that it cannot be granted under governing law. These reasons alone are a sufficient basis to deny u-blox's motion. U-blox has also not demonstrated that any of the relevant factors weigh in its favor. As to likelihood of success, u-blox has now disclaimed reliance on its antitrust claim following the U.S. Department of Justice's statement that this claim "does not properly sound in antitrust law." U-blox's FRAND-based claims also provide no proper basis for the requested relief. Further, there is no evidence of imminent irreparable harm, which cannot be established by the vague and conclusory declarations submitted by u-blox. The balance of equities and public interest also weigh in InterDigital's favor. The motion is without merit and should be denied.

## II. STATMENT OF FACTS

### A. InterDigital

InterDigital is a publicly-traded American technology company headquartered in Delaware that is a pioneer in developing wireless telecommunications technologies. Founded in 1972, InterDigital is listed on NASDAQ and is included in the S&P MidCap 400 index. Merritt Decl. ¶ 5. Over its history, InterDigital has invested over $1 billion in research and development. *Id*. InterDigital has over 350 employees, at least half of whom are engineers. *Id*. InterDigital's patent portfolio includes thousands of U.S. and foreign issued patents and patent applications relevant to a diverse range of hardware and software technologies important to mobile devices, including cellular and WiFi connectivity, video codecs, displays, user interface, sensors, and location services. *Id*. ¶ 6. InterDigital has been a recipient of the prestigious Licensing Achievement Award by the Licensing Executives Society for its outstanding contributions to intellectual property licensing. *Id*. ¶ 10. InterDigital has also been recognized for its key technological contributions; in 2018 alone, InterDigital won "Best IoT/Smart Home or 5G Technology" award as part of the annual CSI Awards, and the Global Telecoms Award in the "Advancing the Road to 5G" category. *Id*. ¶ 9. InterDigital has broadly licensed its patents to companies in the telecommunications industry. *Id*. ¶ 13. InterDigital's dozens of current and past licensees include major companies such as Apple, Samsung, Huawei, LG Electronics, Ericsson, Panasonic, Sharp, Fujitsu, Kyocera, and Sony. *Id*.

### B. U-Blox and Its Supply Chain

U-blox manufactures cellular modules that can be used to provide cellular functionality in various products. [REDACTED], are InterDigital licensees. Mattis Decl., ¶¶ 39-40. [REDACTED] *Id*. ¶ 39. [REDACTED] is a manufacturing company that develops and manufactures devices that



may include wireless functionality. *Id.* ¶ 40. [REDACTED] has a similar business to [REDACTED]. Companies like [REDACTED] are known as "ODMs," or "original design manufacturers," because they manufacture devices designed by other companies, to be sold under the brand of the product designer. *Id.* [REDACTED] *Id.* [REDACTED] *Id.*

Because InterDigital does not seek to "double charge" royalties, in the situation where a product supply chain includes more than one licensee, InterDigital will make arrangements to collect royalties from only one of them. *Id.* ¶ 37. Which licensee ultimately makes a direct royalty payment to InterDigital can vary. *Id.* [REDACTED] However, if the entity paying royalties for particular products becomes unlicensed, such as through expiration of the license, the other licensee involved in making the product will be responsible for royalty payments under its own license. *Id.* ¶ 42. Thus, while InterDigital has a policy not to "double charge" royalties, it quite reasonably expects (and bargains for the contractual rights to ensure) that ***one*** of its licensees involved in making a product will pay the agreed-upon royalty.

**C. History of InterDigital / U-blox Relationship**

InterDigital and u-blox engaged in bilateral, arms' length negotiations that led to the Patent License Agreement (PLA) signed in March 2012 [REDACTED] *Id.* ¶¶ 4-6; Baker Decl., Ex. A ("PLA"). [REDACTED]



[redacted]

[redacted]

As noted, InterDigital has no relationship with u-blox's end customers [redacted] contrary to the false impression conveyed by u-blox's motion, InterDigital did not contact them at all. Mattis Decl. ¶ 44. [redacted]

---

[1] InterDigital is in the process of meeting and conferring with u-blox as to the arbitrability of this dispute, and reserves the right to compel arbitration if necessary. However, [redacted] InterDigital agrees that this TRO application may be decided in this Court given that [redacted] InterDigital also preserves, and does not waive, all arguments based on *forum non conveniens* and 28 U.S.C. § 1404, including the forum selection clauses in the parties' agreements.



*Id.*

While u-blox's motion incorrectly states that

*Id.* ¶ 43.

Thus, u-blox's allegations that InterDigital "forced" u-blox into license extensions at purportedly excessive royalty rates by "threatening" its customers are

not remotely accurate. Putting aside that InterDigital's license terms are fully consistent with FRAND and not "excessive," u-blox's motion identifies only two customers ([redacted]), and InterDigital did not contact either of them. Rather, InterDigital did nothing more than provide notifications [redacted] InterDigital indisputably has the contractual right to collect royalties under its licenses [redacted]; u-blox's suggestion that there is something wrongful or improper about doing so is baseless.

### D. Good Faith Negotiation Pursuant to the ETSI FRAND Commitment

The FRAND commitments at issue are reflected in the written declaration forms InterDigital submitted to ETSI. The forms are included as annexes to ETSI's IPR Policy. They have two parts: (1) the IPR Information Statement, which includes a list of patents as to which it is the patent owner's "present belief" that the patents "may be or may become ESSENTIAL" to a standard; and (2) the Licensing Declaration, which states: "***To the extent*** that the IPR(s) disclosed in the attached IPR Information Statement Annex ***are or become, and remain ESSENTIAL*** . . . the Declarant and/or its AFFILIATES are (1) ***prepared to grant*** irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy. . . ." *E.g.*, Doc. No. 1-18. Clause 6.1 provides for an "undertaking in writing that [the declarant] is ***prepared to grant*** irrevocable licences on fair, reasonable and non-discriminatory ("FRAND") terms and conditions."[2] The ETSI IPR Policy is governed by the law of France. *Id.* § 12.

---

[2] ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

The ETSI IPR Policy expressly sets forth the Policy's goals. Its objective is to adopt "solutions which best meet the technical objectives" of the telecommunications sector, and:

> In achieving this objective, the ETSI IPR POLICY ***seeks a balance between the needs of standardization for public use*** in the field of telecommunications and ***the rights of the owners of IPRs***.
>
> . . . .
>
> ***IPR holders*** whether members of ETSI and their AFFILIATES or third parties, ***should be adequately and fairly rewarded for the use of their IPRs*** in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

*Id*. §§ 3.1- 3.2. Thus, contrary to u-blox's suggestion that the ETSI IPR Policy is concerned only with making patents available to manufacturers, it actually expressly provides that the interests of patent owners are to be equally protected.

The "prepared to grant" language in the ETSI IPR undertaking, as interpreted under French law, means that the IPR owner and the standards implementer must both negotiate in good faith toward a license on FRAND terms. *Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800, 2013 WL 3961230, at *232 (June 28, 2013) (FRAND commitment "imposes on both negotiating parties a duty to negotiate in good faith."); *TCL v. Ericsson*, No. CV 15-2370 JVS (DFMX), 2018 WL 4488286, at *55 (C.D. Cal. Sept. 14, 2018). (finding "mutual duty of the parties to negotiate in good faith"). Here, the PLA and its amendments were arrived at through arms' length, good faith negotiations, and are indisputably consistent with FRAND. InterDigital has likewise continued to engage in good faith negotiations with u-blox for the most recent renewal, but instead of sincere negotiation, u-blox engaged in bad faith delay tactics. Mattis Decl. ¶¶ 25-28. Then, with no warning, u-blox filed this lawsuit on January 1, 2019, along with this *ex parte* TRO application.

This is not the first time u-blox has sued a patent owner claiming breach of FRAND. In July 2018, u-blox filed a nearly identical complaint against Philips, asserting all of the same claims. *U-Blox AG et al v. Koninklijke Philips N.V.*, 3:18-

cv-01627-DMS-JLB, Doc. No. 1 (S.D. Cal. Jul, 18, 2018). U-blox's use of litigation as a means of applying settlement pressure apparently worked, as u-blox filed a notice of dismissal about six weeks later. *Id*. at Doc. No. 7. U-blox's careless, knee-jerk accusations of "breach of FRAND" are evident from u-blox's [REDACTED] Baker Decl. Ex. H. This can hardly be considered good faith negotiation behavior.

U-blox has thus embarked on a strategy of "hold-out," pursuant to which it seeks to deprive InterDigital of royalties from third parties to which it is legally entitled.[3] *See Certain Wireless Devices With 3G and/or 4G Capabilities*, Inv. No. 337-TA-868, 2014 WL 2965327, at *78 (June 13, 2014) (hold-out behavior "puts pressure on the IPR owner to settle, as the owner is not compensated during a period of exploitation of the IP by the unlicensed parties"). This would allow u-blox to use this litigation to force InterDigital into a settlement with unreasonably low royalties that do not "fairly and adequately" compensate InterDigital for its intellectual property. U-blox seeks to accomplish this goal by asking the Court to restrain InterDigital from informing ***its own licensees*** of the undisputedly ***true and publicly known*** fact that u-blox is no longer licensed, in order to deprive InterDigital of royalty revenue during the pendency of the case. Although u-blox claims that its aim is to determine "FRAND terms" for a license via this litigation, u-blox is certainly aware that such lawsuits commonly take many years. For

[3] While u-blox made a purported offer [REDACTED] PLA § 3.4.

example, the *TCL v Ericsson* case relied on by u-blox was filed five years ago in 2014; it is now on appeal to the Federal Circuit, and it may be years before the litigation is finally concluded. InterDigital has offered to resolve this dispute via a streamlined arbitration to determine FRAND license terms, [redacted] Mattis Decl., ¶¶ 35-36.

## III. ARGUMENT

### A. Legal Standard

While a court may issue a TRO on an *ex parte* basis without notice to the opposing party, here, u-blox provided notice to InterDigital's counsel after filing the application, and the Court set a briefing schedule. Doc. No. 11, 25. Thus, the Court may treat this as a motion for preliminary injunction. *Klinke v. Bannister*, No. 12-CV-00032, 2013 WL 6120437, at *4 (D. Nev. Nov. 20, 2013) ("[I]t is appropriate to treat a non-ex parte motion for a [TRO] and preliminary injunction as a motion for a preliminary injunction"); *see also* 11A Wright & Miller, Federal Practice and Procedure § 2951 (3d ed.) (following notice, TRO procedure "does not differ functionally from that on an application for a preliminary injunction"). This is because the standard for granting a temporary restraining order mirrors that for a preliminary injunction. *OG Int'l, Ltd. v. Ubisoft Entm't*, No. C 11-04980 CRB, 2011 WL 5079552, at *3-4 (N.D. Cal. Oct. 26, 2011).

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674 (2008). It "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc*, 555 U.S. 7, 22 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20 (citations omitted). The plaintiff bears the burden of proof on each element. *Klein v. San

*Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts," and "such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006).

U-blox is simply wrong when it argues that the "serious questions" standard used by the Ninth Circuit to evaluate the four *Winter* factors means that "a strong showing on the merits justifies preserving the status quo even in cases with less substantial irreparable harm." Doc. No. 2-1 at 18. The "serious questions" standard actually compares "likelihood of success" with "balance of hardships," not irreparable harm. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Courts have expressly rejected the argument that the scale "tips the other way" to allow injunctions where "there is a lesser showing of irreparable harm and a stronger likelihood of success on the merits." *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 913 (S.D. Cal. 2017) (plaintiff's argument that lesser showing of irreparable harm can be offset by strong showing on merits "misstate[s] the law").

**B. The Requested Injunction Would Violate the First Amendment**

"The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, (1993) (quotation omitted). "Temporary restraining orders and permanent injunctions — *i.e.*, court orders that actually forbid speech activities — are classic examples of prior restraints." *Id*. As explained by the Supreme Court, "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Thus, a prior restraint bears "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U. S. 58, 70 (1963). The presumption applies even when the party seeking the restraint alleges that the

speech will have harmful effects, *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971) (denying injunction prohibiting publication of Pentagon Papers even in light of asserted threat to national security interests), and when the speech curtailed is commercial speech. *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21. 2017).

Here, the requested injunction falls squarely within the definition of a prior restraint. U-blox seeks an order "prohibiting InterDigital from contacting u-blox's customers and downstream manufacturers claiming that u-blox is not licensed." Doc. No. 2-1 at 28. However, u-blox publicized the expiration of its license in its public filings in this lawsuit (*id.* at 9: "The term of u-blox's temporary license from InterDigital expired on December 31, 2018"), and then immediately issued a press release drawing attention to the lawsuit.[4] Thus, u-blox seeks to prevent InterDigital from contacting others (including InterDigital's own licensees) and ***truthfully*** conveying the ***publicly known*** fact that u-blox is no longer licensed. There is no basis for u-blox's position that InterDigital cannot inform its own licensees (or anyone else) of the very same facts that u-blox itself has been actively publicizing to the world. That is particularly so where the contractual rights and obligations of InterDigital's other licensees are materially affected by u-blox's license status.

While demanding an injunction that unequivocally restricts InterDigital's freedom of speech, u-blox fails to offer any legal justification whatsoever for such an impermissible infringement of this fundamental Constitutional right. U-blox's motion does not and cannot rely on the narrow exception for "commercial speech," pursuant to which "the First Amendment offers no protection for ***false or deceptive*** commercial speech." *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1084 (C.D.

---

[4] https://www.u-blox.com/en/press-releases/u-blox-seeks-fair-licensing-terms (stating that u-blox filed lawsuit to "obtain" a license to InterDigital's patents.)

Cal. 2003) (emphasis added). That is because the communication to be prohibited – the fact that u-blox's license has expired – is undisputedly ***true*** as averred by u-blox's own motion. "[T]ruthful commercial speech . . . is entitled to significant First Amendment protection." *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 830 (9th Cir. 2011); *see also New.net*, 356 F. Supp. 2d at 1084 ("[T]ruthful commercial speech does enjoy meaningful First Amendment protection.") (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, (1978) and *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989)). In addition, "[w]hen judicial discretion is exercised to restrain commercial communications, it is subject to special scrutiny." *Mikohn Gaming Corp. v. Acres Gaming, Inc*., 165 F.3d 891, 895 (Fed. Cir. 1998).

The right to free speech is so important that even if u-blox's motion ***were*** based on allegedly false commercial speech (which it is not), an order prospectively restraining speech would still be impermissible in the context of preliminary relief prior to any adjudication:

> Courts view preliminary injunctions against speech with great skepticism because such an injunction by its nature restricts speech before the substantive issues are fully adjudicated on the merits. The danger is that a court could improperly and prematurely enjoin speech that is ultimately found to be entitled to full constitutional protection . . . . . Enjoining protected speech in this manner could be a grave violation of the speaker's First Amendment rights.

*La Marca v. Capella Univ*., No. SACV 05-642-MLG, 2007 WL 9705901, at *3 (C.D. Cal. Sep. 28, 2007) (denying preliminary injunction that would entail "a substantial risk of improperly enjoining constitutionally protected speech"). Indeed, "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rel*., 413 U.S. 376, 390 (1973). Thus, "'[t]he danger of a prior restraint, as opposed to [an] ex post . . . action, is precisely that making predictions ex ante as to what

restrictions on speech will ultimately be found permissible is hazardous and may chill protected speech.'" *New.net*, 356 F. Supp. 2d at 1084 (quoting *Latino Officers Ass'n v. City of N.Y.*, 196 F.3d 458, 465 (2d Cir. 1999)).

Accordingly, courts routinely deny motions for preliminary injunctions seeking prior restraint of speech in disputes between commercial enterprises, even where falsity is alleged. *Exeltis*, 2017 WL 6539909 (denying preliminary injunction as prior restraint); *Johnson v. Storix, Inc.*, No. 3:14-cv-1873-H-BLM, 2015 WL 12532477, at *1 (S.D. Cal. Oct. 30, 2015) (denying preliminary injunction where plaintiff sent "email to Defendant's customers [to] tell them, among other things, that the software they purchased from Defendant infringed on Plaintiff's copyright"); *Allen v. Ghoulish Gallery*, No. 06-cv-371 NLS, 2007 WL 1555739, at *3 (S.D. Cal. May 23, 2007) (denying preliminary injunction to prohibit plaintiff from "contacting, either directly or indirectly, any of defendants' customers" because "this type of conduct cannot be enjoined" as it "would put a prior restraint on plaintiff's speech"); *Champion-Cain v. MacDonald*, , No. 14-cv-3540-GPC-BLM, 2015 WL 4393303, at *13-14 (S.D. Cal. July 15, 2015) (denying preliminary injunction against defamatory statements in solicitations to plaintiff's employees); *Wajcman v. Stich*, 05cv 1200-LAB (CAB), 2006 U.S. Dist. LEXIS 84520, at *1–5 (S.D. Cal. Nov. 17, 2006) (TRO denied as prior restraint even though defendants' complaints to eBay about plaintiffs' listings caused irreparable harm). Tellingly, u-blox's motion did not cite a single case in which a court granted a preliminary injunction constituting a prior restraint of the type u-blox requests here. The unconstitutional nature of the proposed injunction is a more than sufficient basis, standing alone, for the Court to deny this motion.

### C. The Requested Injunction Must Be Denied As Vague and Overbroad

A "basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the

injunction actually prohibits." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974). As provided in the Rule, every injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). As the Supreme Court has explained "[t]he specificity provisions of Rule 65 (d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 475–77 (1974). Rather, "[t]he Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id*. at 476. U-blox's requested injunction is hopelessly vague and overbroad and should therefore be denied. *Conigliaro v. Yeh*, No. 12-7157 (FSH) (PS), 2012 WL 12882435, at *2 (D.N.J. Dec. 17, 2012) (denying preliminary injunction where "Plaintiffs seek to enjoin a broad and vaguely defined swathe of conduct").

U-blox seeks an order prohibiting InterDigital from:

> contacting u-blox's customers and downstream manufacturers, demanding royalty payments from them for products incorporating u-blox technology, or otherwise disrupting or interfering with u-blox's relationships with its customers and downstream manufacturers.

Doc. No. 2 at 2. InterDigital of course does not know the universe of all companies that comprise u-blox's "customers and downstream manufacturers." According to u-blox's website:

> The diversity of our customer base is one of our greatest strengths. We work with more than 6100 large and small businesses across a broad range of market sectors, covering the Americas, EMEA and APAC. Moreover, none of our customer[s] accounts for more than 6% of our revenue, and our 84 biggest customers, which account for 80% of our revenue, are based in 24 countries, spanning all regions of the world. This diversity makes our business exceptionally low-risk and provides the platform on which we are growing.

Rees Decl., Ex. A. It is not even facially plausible that u-blox's proposed injunction, covering over 6,100 unnamed customers located throughout the world,

is of sufficient specificity to comply with Rule 65. And that does not even account for the unspecified number of unknown future customers that u-blox may acquire during the time period that the injunction would remain in effect. *See List Indus. v. List*, No. 2:17-CV-2159 JCM (CWH), 2017 WL 3749593, at *2-3, 4-5 (D. Nev. Aug. 30, 2017) (denying preliminary injunction against contacting customers where defendant does not know the identities of plaintiff's customers).

Further, the conduct sought to be enjoined, including "contacting" an undefined list of customers in any manner about any subject, is so amorphous and overbroad that it cannot define appropriate injunctive relief:

> [P]laintiff's proposed language for the injunction is overbroad in the extreme. . . . [T]his order would prohibit defendant from "contacting," in any form or fashion, for any reason, by virtually any medium of communication, virtually any person or entity that may now or in the future do business with the defendant. . . . [T]his prior restraint would reach far beyond and is thus constitutionally invalid as overbroad.

*Id.* at *5. InterDigital would be at risk of contempt just by approaching any infringer to take a license, because the infringer could coincidentally be one of u-blox's 6,100+ customers. In addition, the requested prohibition on "otherwise disrupting or interfering with u-blox's relationships" (Doc. No. 2 at 2) does not define any specific conduct, and thus is far too vague to provide fair and precisely drawn notice of what the injunction actually prohibits. *List Indus.*, 2017 WL 3749593 at *5 (injunction impermissibly vague where defendant will not "always know if his conduct is 'intimidating' or otherwise generally 'interfer[es]' with another person or entity"). The proposed injunction is so indefinite that InterDigital could ***unknowingly*** violate it, which is exactly what Rule 65 prohibits.

Accordingly, because u-blox seeks an overly broad, vague injunction that does not provide fair notice of the conduct to be enjoined, the proposed injunction is improper on its face, and should be denied. *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1072–73, 1076–77 (9th Cir. 2000) (vacating injunction that "does not even come close to satisfying Rule 65's specificity requirements"); *Castro v. Kailin*, No.

EDCV 11-01973 JFW CSS, 2012 WL 209187, at *3 (C.D. Cal. Jan. 24, 2012) (dismissing claim for injunctive relief where "the majority of Plaintiff's requested injunctive relief is vague or overbroad"); *see also Brady v. United of Omaha Life Ins. Co*., 902 F. Supp. 2d 1274, 1284 (N.D. Cal. 2012) (injunction improper where "enjoined party cannot readily determine what conduct is being prohibited.").

### D. All of the Preliminary Injunction Factors Weigh Against U-Blox

#### 1. No Likelihood of Success

On January 11, 2019 the U.S. Department of Justice filed a Notice of Intent to file a Statement of Interest expressing the view that "Plaintiffs' Fourth Cause of Action, 'antitrust monopolization in violation of Section 2 of the Sherman Act,' does not properly sound in antitrust law and that injunctive relief granted on that basis would risk distorting licensing negotiations for standard essential patents." Doc. No. 27 at 2. In response, u-blox has now disclaimed reliance on its monopolization claim as a basis for showing likelihood of success. Doc. No. 32.

Accordingly, the only remaining bases in u-blox's motion for likelihood of success on the merits are its FRAND-based claims (breach of ETSI contract and declaratory judgment of FRAND terms). However, there is nothing in these claims that could establish entitlement to an injunction preventing InterDigital from contacting customers (including its own licensees). Under Ninth Circuit law, a "preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631, 635–38 (9th Cir. 2015). In order for a preliminary injunction to be issued, there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id*. at 636. Such a nexus "is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

Absent that relationship or nexus, the district court lacks authority to grant the relief requested. *Pac. Radiation*, 810 F.3d at 636-37.

The remaining FRAND-based claims relied on in u-blox's motion do not have any nexus to the requested preliminary injunction. The proposed injunction does not include enjoining breach of an "ETSI contract" or specific performance thereof. Indeed, "preliminary injunctions are rarely issued for breach of contract claims." *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, No. 15-cv-03839-HSG, 2015 WL 7753267, at *5 (N.D. Cal. Dec. 2, 2015). U-blox's declaratory judgment claim to set FRAND terms includes no request for an injunction at all, seeking only a declaration. Doc. No. 1 at 36.

In fact, the requested injunction against contacting customers appears instead to be sought as relief for a hypothetical, non-pled tortious interference with contract claim that appears nowhere in u-blox's Complaint. While u-blox's Complaint repeatedly alleges that InterDigital is "interfering with u-blox's important customer relationships," *e.g.*, Doc. No. 1 at 5, u-blox chose not to actually assert an interference claim alleging such conduct to be wrongful or tortious. That, of course, is because it cannot. InterDigital has every right to enforce its license agreements with licensees [redacted], and no claim of interference could be made out in these circumstances. *See* Restatement (Second) of Torts, § 773 ("One who, by asserting in good faith a legally protected interest of his own . . . intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed . . ."). InterDigital's actions in contacting its own licensees to inform them of undisputedly true facts are entirely justified, negating any possibility of an interference claim. U-blox should not be permitted to use a motion for preliminary relief in this lawsuit as a back-door means to seek redress for a baseless (and non-pled) interference claim.

U-blox has also failed to demonstrate any likelihood of success on the merits of its FRAND-based claims. InterDigital has at all times been "prepared to grant" a license on FRAND terms under the ETSI IPR Policy, as demonstrated by its good faith negotiation and offer of arbitration, and therefore has not breached any FRAND commitments. U-blox relies primarily on inapposite cases in which courts evaluated whether filing a lawsuit seeking an injunction for patent infringement can result in patent "hold up" or a breach of an SSO policy. *See, e.g.,* Doc. No. 2-1 at 22, 29 (citing *Microsoft v. Motorola*, 795 F.3d 1024, 1046 (9th Cir. 2015) for the proposition that a jury could conclude that patent holder's foreign injunctive lawsuits could result in hold-up and undue pressure to license). Here InterDigital did not file an injunctive action against u-blox (nor even threatened to do so), but instead has made repeated license offers and has also offered to arbitrate FRAND terms. It is also questionable whether u-blox can establish declaratory judgment jurisdiction for its claim to "declare" FRAND terms where that claim was prematurely filed early in the parties' renewal negotiations. In any event, given the enormously complicated endeavor involved in "determining FRAND terms," u-blox cannot plausibly claim at this stage that there is any likelihood that a fact-finder would accept u-blox's proposed terms rather than InterDigital's. U-blox has failed to make the requisite showing of likelihood of success.

**2. No Irreparable Harm**

U-blox's motion fails to demonstrate a likelihood of irreparable harm. "A mere possibility that irreparable injury will occur is not sufficient." *Thome v. U.S. Food and Drug Admin.*, No. 11-CV-00676-LHK, 2011 WL 856290, at *2 (N.D. Cal Mar. 9, 2011); *see also Winter*, 555 U.S. at 22. Speculative harm does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984). A plaintiff must do more than merely allege imminent harm sufficient to establish standing; it must demonstrate "immediate threatened injury as a prerequisite to

preliminary injunctive relief." *Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988) (citing *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980)). In addition, monetary loss cannot constitute irreparable harm. *Cal. Pharm. Ass'n v. Maxwell–Jolly*, 563 F.3d 847, 852 (9th Cir.2009) (modified on other grounds) ("[E]conomic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award.") (citation omitted); *see also Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850–51 (9th Cir. 1985) ("[P]urely monetary injury is compensable, and thus not irreparable.").

Irreparable harm cannot be found based on "unsupported and conclusory statements regarding harm [plaintiff] *might* suffer." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Rather, "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Id*. at 1251. U-blox's motion fails to demonstrate irreparable harm. Instead, u-blox's declarants merely recite conclusory assertions of speculative harm to "goodwill" and customer relationships. Such claims "based on conveniently unquantifiable assertions of goodwill" and predictions "that the 'death of the corporation' is imminent" are inadequate to show irreparable harm. *Vape Soc'y Supply Corp. v. Zeiadeh*, No. 16-01971 AG (DFMx), 2017 WL 3000020, at *2 (C.D. Cal. Jan. 9, 2017) (denying preliminary injunction where plaintiff proffered "no *clear* evidence regarding [its] finances, revenue streams, inventory, or assets."); *see also McDavid Knee Guard, Inc. v. Nike USA, Inc*., 683 F. Supp. 2d 740, 748-49 (N.D. Ill. 2010) (movant's "conclusory affidavits based on speculation" insufficient to demonstrate irreparable harm).

**Alleged Loss of Customers And Goodwill**. U-blox relies on outdated pre-*Winter* case law to argue that "[e]vidence of threatened loss of prospective customers or goodwill . . . supports a finding of the ***possibility*** of irreparable harm." Doc. No. 2-1 at 26, citing *Stuhlberg Int'l Sales Co. v. John D. Brush &*

*Co.*, 240 F. 3d 832, 841 (9th Cir. 2001); *see also id.* (citing *Rent-A-Center, Inc. v. Canyon Tel. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (loss of goodwill showed "possibility of irreparable harm.")). However, post-*Winter*, a mere "possibility" of irreparable harm is not sufficient:

> [Plaintiff] asserts that it "has and will continue to lose customers and suffer damage to its goodwill if [defendant's] deceptive practices are not stopped." [Plaintiff] cites *Stuhlburg Int'l Sales Co. v. John D. Brush & Co*. for support. In *Stuhlburg*, the Ninth Circuit applied the pre-*Winter* standard for preliminary injunctive relief when it concluded that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." But post-*Winter*, a court must find that irreparable harm is likely, not merely possible, to accord preliminary injunctive relief.

*Sec. Alarm*, *Fin. Enters., Ltd. P'ship v. Alarm Prot. Tech., L.L.C.*, No. 3:13-cv-00102-SLG, 2015 WL 3459415, at *2 (D. Alaska June 1, 2015).

U-blox has made only conclusory assertions of potential lost customers and goodwill in the absence of an injunction. Accordingly, u-blox has shown no irreparable harm on this basis. *Compal*, 283 F. Supp. 3d at 919 ("conclusory assertions about the importance of goodwill to [movant's] enterprise are not enough to demonstrate that it is likely to be irreparably harmed by the loss of goodwill . . . ."). And even if u-blox had made a sufficient evidentiary showing of substantial lost customers and goodwill (which it has not), as numerous courts have found, loss of customers and goodwill are monetary injuries that do not constitute irreparable harm. *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2017 WL 2903143, at *3 (N.D. Cal. July 7, 2017) ("loss of prospective business opportunities is generally an economic harm"); *Bell Atl. Bus. Sys. v. Storage Tech. Corp.*, No. C-94-0235 MHP, 1994 WL 125173, at *3 (N.D. Cal. Mar. 31, 1994) ("loss of customers . . . [does] not amount to irreparable harm because such injuries . . . have an adequate remedy at law."); *Sec. Alarm*, 2015 WL 3459415, at *2; *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473–74 (9th Cir. 1985); *Champion-Cain*, 2015 WL 4393303, at *10-11.

In particular, alleged lost business due to statements made by a patent owner to third parties to protect patent rights does not show irreparable harm. Patentees "have a right to protect their inventions by, among other things, warning the marketplace against infringement." *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008) (citation omitted) (vacating preliminary injunction where no irreparable harm shown). InterDigital likewise has the right to notify its licensees that certain sales may be unlicensed in the case of non-payment of royalties by its licensees. To the extent lost sales result, this is not irreparable harm sufficient to support a preliminary injunction.

**No Threat of** [REDACTED] U-blox's unsupported assertion that it might lose so many customers that "[REDACTED]" is not remotely plausible. Doc. No. 2-1 at 24. Although u-blox's declarant states that "[REDACTED], and u-blox provides no information as to how much of the [REDACTED] U-blox does not quantify the amount of profit [REDACTED] would have any material effect on u-blox's financial condition at all, particularly when measured against the royalties that u-blox is now ***not*** paying to InterDigital. This record cannot support a finding of irreparable harm. *DiMare Fresh, Inc. v. Sun Pac. Mktg. Coop.*, No. CIV-F-06-1265 AWI SMS, 2006 WL 2686969, at *3 (E.D. Cal. Sept. 19, 2006) (although plaintiff stated that "'25-40% of [plaintiff's] business for tomatoes' has been interrupted . . . [Plaintiff] has not stated what percentage of its total revenues (as opposed to percentage of tomato business) would be impacted.").

In fact, u-blox's public statements strongly contradict its purported claim of [REDACTED] U-blox's website represents that "the diversity of our customer base is one of our

greatest strengths." Rees Decl, Ex. A. U-blox touts its "more than 6100" customers "across a broad range of market sectors, covering the Americas, EMEA and APAC." *Id*. U-blox's website reveals that "***none of our customer[s] accounts for more than 6% of our revenue***" and that "[t]his diversity makes our business exceptionally low-risk." *Id*. The massive and robust customer base u-blox describes on its website, consisting of over 6,100 customers, belies the story of imminent irreparable harm that u-blox seeks to tell in its motion. It is simply not plausible that [REDACTED] would have any material effect on u-blox's business – much less an effect causing [REDACTED] of the company. In the absence of any specific evidence supporting the conclusory assertion that [REDACTED]," no irreparable harm has been demonstrated. *Am. Passage Media Corp.*, 750 F.2d at 1473–74 (statements that plaintiff "sustained large losses . . . are insufficient evidence that [plaintiff] is threatened with extinction"); *DiMare*, 2006 WL 2686969, at *3 ("More than simple recitation of the threat, [plaintiff] must present specific credible and admissible evidence that such damage threatens its businesses with termination."); *Int'l Medcom*, 2015 WL 7753267, at *5 ("the record does not contain non-conclusory evidence sufficient to establish that . . . [plaintiff's] survival is a matter of weeks or months").

Similarly, u-blox's assertion that it "[REDACTED] is conclusory and unsupported. U-blox provides no basis on which to conclude that [REDACTED] *See McDavid*, 683 F. Supp. 2d at 748-49 (movant's prediction that it will be required to "discharge numerous employees" was conclusory and insufficient to justify injunctive relief).

**3. Balance of Equities**

The balance of equities tips sharply in InterDigital's favor. U-blox's proposed injunction would represent a direct interference with the contractual

relationships between InterDigital and its licensees, lasting potentially for years. InterDigital would be greatly harmed if it could not contact its own licensees to request payment of agreed-upon royalties. Mattis Decl. ¶¶ 47-52. The harm would include lost royalty revenue and damage to InterDigital's ongoing relationships with these licensees. *Id*. InterDigital would also be harmed if it could not contact potential licensees to expand its licensee base and obtain fair compensation for use of its patents. By contrast, u-blox's failure to renew its license means that u-blox will be continuing to sell cellular products without paying any royalties during the pendency of the case. This "free-riding" behavior by u-blox provides a substantial benefit to u-blox at InterDigital's expense.

Further, because the proposed injunction would violate the First Amendment, any alleged hardship that may be suffered by u-blox pales in comparison to deprivation of Constitutional rights. In such a situation, the balance of equities favors the defendant. "The United States Supreme Court has declared that 'prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights,'" and thus "[a]lthough plaintiff presents a sympathetic case, this court cannot rule that plaintiff's hardship outweighs defendant's First Amendment rights." *List*, 2017 WL 3749593, at *6 (quoting *Neb. Press Ass'n*, 427 U.S. at 559). This alone is sufficient to tilt the balance of equities steeply in favor of InterDigital.

In addition, the Federal Circuit recognizes a patent holder's right to publicize its patent rights in the marketplace. *Zenith Elecs. Corp. v. Exzec, Inc*., 182 F.3d 1340, 1353 (Fed. Cir. 1999); *Mikohn*, 165 F.3d at 897 ("A patentee has the right to inform a potential infringer of the existence of the patent, whereby the recipient of the information may . . . perhaps seek a license . . . ."). InterDigital has the right to truthfully inform its licensees of facts that affect whether their sales are licensed or unlicensed, and thus potentially infringing if a royalty is not paid. If InterDigital's licensees may owe a royalty but InterDigital is prohibited from so

informing them, it may later become impossible to collect due to claims of waiver, or subsequent insolvency of the licensee. InterDigital also has the right to approach other potential licensees who may (unbeknownst to InterDigital) turn out to be customers of u-blox. *See Mikohn*, 165 F.3d at 893 (vacating preliminary injunction prohibiting assertions of infringement "to customers and prospective customers of [movant]"). It is undisputed that the statements about patent rights that are sought to be enjoined here (*i.e.*, that u-blox is no longer licensed) are truthful. *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 765 (W.D. Pa. 2007) (preliminary injunction denied where movant made "no threshold showing of falsity or incorrectness"), *aff'd*, 529 F.3d 1334, 1338 (Fed. Cir. 2008). InterDigital would certainly be harmed if it could not exercise its legitimate rights under the patent law.

**4. Public Interest**

As one court aptly explained in rejecting a prior restraint as against the public's interest, "[t]he public has an unflinching interest in its freedom from prior restraints on speech, which is nothing short of a fundamental freedom of American democracy." *List*, 2017 WL 3749593, at *6; *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("[T]he public interest favors the exercise of First Amendment rights."). Here, the public interest would equally be enormously disserved by granting the requested prior restraint.

In addition, the public interest is relevant when an injunction will impact non-parties. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Here, the injunction would directly interfere with InterDigital's relationships with third parties [REDACTED] who are InterDigital licensees. The extensive impact of the proposed injunction on non-parties is against the public interest in enforcing valid contracts and promoting contractual certainty.

There is also a strong public interest in protecting intellectual property rights. *Compal*, 283 F. Supp. 3d at 923 (party raised "valid point" that "protecting

intellectual property rights" serves public interest). U-blox's effort to prohibit InterDigital from enforcing its patent licenses via its license agreements would be against the public interest.

**E. A Bond Would Be Required for Any Injunction**

Because InterDigital would be damaged by the proposed injunction, u-blox must give security in an amount sufficient to pay such damages if the injunction is later found to have wrongly issued. Fed. R. Civ. P. 65(c). U-blox's only support for its contention that it need not post a bond is an inapposite case in which the plaintiff, "a non-profit environmental group," indicated that it was "unable to post a substantial bond." *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985). U-blox is a for-profit company with significant assets that clearly has the resources to post a bond.[5] Rather, u-blox's reluctance to post a bond simply shows it is unwilling to "demonstrate confidence in [its] legal position by posting bond in an amount sufficient to protect [its] adversary." *Edgar v. Mite Corp*., 457 U.S. 624, 649 (1982). U-blox should post a bond of [REDACTED], an amount commensurate with [REDACTED] Mattis Decl. ¶ 53.

**IV. CONCLUSION**

For the reasons set forth above, u-blox has not met its burden of making a clear showing that it is entitled to the extraordinary and drastic remedy of a preliminary injunction. The Court should deny u-blox's motion.

---

[5] *See* https://www.u-blox.com/sites/default/files/Financial_Report_16.03.2018-1.pdf (reporting cash and cash equivalents of CHF 169 million – over US$170 million).

Dated: January 18, 2019

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

By: /s/ *David S. Steuer*
David S. Steuer

David S. Steuer
dsteuer@wsgr.com
Michael B. Levin
mlevin@wsgr.com
Maura L. Rees
mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

Lucy Yen
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800

Natalie J. Morgan
nmorgan@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, California 92130-3002
Telephone: (858) 350-2300

*Counsel for Defendants Interdigital, Inc., Interdigital Communications, Inc., Interdigital Technology Corporation, Interdigital Patent Holdings Inc., Interdigital Holdings, Inc., and IPR Licensing, Inc.*