1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   STEPHEN S. KORNICZKY, Cal. Bar No. 135532
3  skorniczky@sheppardmullin.com
   MARTIN R. BADER, Cal. Bar No. 222865
4  mbader@sheppardmullin.com
   MATTHEW W. HOLDER, Cal. Bar. No. 217619
5  mholder@sheppardmullin.com
   RYAN P. CUNNINGHAM, Cal Bar No. 275813
6  rcunningham@sheppardmullin.com
   12275 El Camino Real, Suite 200
7  San Diego, California 92130-2006
   Telephone:  858.720.8900
8  Facsimile:   858.509.3691

9  DANIEL L. BROWN (admitted *Pro Hac Vice*)
   dbrown@sheppardmullin.com
10 30 Rockefeller Plaza, 39th Fl.
   New York, New York 10112
11 Telephone:  212.653.8700
   Facsimile:   212.653.8701

12 Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U-BLOX AG, U-BLOX SAN DIEGO, INC., AND U-BLOX AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC; INTERDIGITAL TECHNOLOGY CORPORATION; INTERDIGITAL PATENT HOLDINGS, INC.; INTERDIGITAL HOLDINGS, INC.; and IPR LICENSING, INC. <br><br> Defendants. | Case No.: 3:19-cv-00001-CAB-BLM <br><br> **PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** <br><br> Hon. Cathy Ann Bencivengo <br> Courtroom: 4C <br> Date: January 31, 2019 <br> Time: 10:00 a.m. |

## I. PRELIMINARY STATEMENT

InterDigital's brief demonstrates that there is a sharp dispute as to whether Interdigital has offered u-blox a patent license on FRAND terms, which it must.[1] However, there is no dispute that (i) InterDigital is obligated to license its standard essential patents ("SEPs") to u-blox on FRAND terms, (ii) u-blox is committed to license InterDigital's SEPs once the Court determines the FRAND terms, and (iii) this Court will set the FRAND terms pursuant to u-blox's declaratory judgment cause of action. Accordingly, there is 100% certainty that u-blox's declaratory judgment claim to determine the FRAND terms will succeed.

InterDigital also acknowledges that it is not entitled to "double dip" and u-blox's customers are not required to pay royalties to InterDigital for licensed u-blox products. Because u-blox has committed to take a license once the Court determines what is FRAND, there is no legitimate reason for InterDigital to disturb the status quo and seek royalties from u-blox's customers, which would result in double recovery. By contrast, InterDigital's practice of threatening u-blox's customers with injunctions force u-blox to make a Hobson's choice – refuse InterDigital's license terms and risk losing its customers or accept the terms and pay exorbitant royalties that are not FRAND. Both decisions will be devastating to u-blox's business.

InterDigital's principal response to u-blox's request to maintain the status quo is that an injunction would restrain InterDigital's speech in violation of the First Amendment. InterDigital's argument that an injunction would prevent it from talking to u-blox's customers or telling them that u-blox does not have a license is a strawman. u-blox does not seek to restrain any speech. Rather, u-blox merely seeks to prevent InterDigital from seeking royalties from u-blox's customers or threatening them with an injunction until the Court determines what is FRAND.

---

[1] *See, e.g., FTC v. Qualcomm Inc.,* No. 5:17-cv-00220 (N.D. Cal. Nov. 6, 2018) ("Ninth Circuit precedent establishes that Qualcomm's FRAND commitments include an obligation to license to all comers . . .").

1  InterDigital's remaining arguments fare no better. InterDigital argues that the
2  requested injunctive relief is not related to u-blox's causes of action. However, the
3  requested injunctive relief concerns InterDigital's obligation to license its alleged
4  SEPs to u-blox on FRAND terms, which is precisely what u-blox seeks in the
5  Complaint. In fact, InterDigital admits that once u-blox is licensed (i.e., the Court
6  sets the FRAND terms), InterDigital will ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
7  ▇▇▇▇▇▇. This is precisely the relief that u-blox seeks so that u-blox and its
8  customers are not improperly forced to overpay for a license to InterDigital's
9  patents.
10  InterDigital's argument that the requested relief is overbroad because it does
11  not know the identity of customers who rely on u-blox's InterDigital license is
12  frivolous. First, InterDigital is not prevented from talking with u-blox's customers.
13  As a matter of common sense, if a customer states that it purchases modules from u-
14  blox, then Interdigital knows that it is not necessary to seek royalties or threaten an
15  injunction because u-blox is in the process of obtaining a license. Second,
16  InterDigital's argument that it does know the identities of u-blox's customers who
17  rely on u-blox's InterDigital license is false. InterDigital concedes that it is able to
18  seek royalties from customers for products that incorporate u-blox modules. It, thus,
19  defies logic that InterDigital is unable to identify those customers and know that it
20  should not seek royalties from them. Finally, to the extent that there is any merit to
21  InterDigital's argument that the requested injunction is overbroad, it can be
22  appropriately tailored through the specific language of the injunction to address any
23  overbreadth concerns.
24  Accordingly, u-blox respectfully requests that the Court grant u-blox's
25  application for a preliminary injunction.
26  **II. ARGUMENT**
27      A. **InterDigital's First Amendment Argument is Meritless**
28  InterDigital's argument that u-blox's requested injunction "would constitute a

prior restraint of speech in violation of the First Amendment" is simply a red herring. u-blox seeks to enjoin InterDigital from seeking or collecting royalties from u-blox customers who rely on u-blox's InterDigital license and not threaten them with injunctions. Granting this injunction does not in any way restrain speech, prevent InterDigital from having discussions with its licensees, or telling the truth about the situation.[2] In any event, as explained below, to the extent u-blox's request could somehow potentially burden free speech, the Court can address this concern in the language of the injunction.

### B. A Preliminary Injunction Should Be Granted

As explained below, contrary to InterDigital's arguments, u-blox satisfies each of the relevant factors for a preliminary injunction.[3]

#### 1. *u-blox is Likely to Succeed on the Merits*

InterDigital's opposition brief and declarations demonstrate that there is a sharp dispute as to whether InterDigital has offered u-blox a patent license on FRAND terms. However, there is no dispute that (i) InterDigital is obligated to license its standard essential patents to u-blox on FRAND terms, and (ii) u-blox will be licensed to InterDigital's SEPs once the Court determines what is FRAND. Accordingly, u-blox's declaratory judgment claim will necessarily succeed because

---

[2] Even assuming *arguendo* that speech is implicated (and it is not), it is of a private business nature, which is "of less First Amendment concern." *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (finding speech of private significance where "[i]t was speech solely in the individual interest of the speaker and its specific business audience"). The cases cited by InterDigital are also inapposite because they concern public speech and not private business conduct, and/or a party seeking to prohibit commercial speech that criticizes a business, which is not the situation here.

[3] u-blox disputes InterDigital's characterization of the parties' prior negotiations and prior license, but those disputes are not pertinent to this motion. InterDigital is required to provide u-blox a FRAND license and u-blox's application concerns InterDigital's conduct pending the determination of FRAND.

1 there is 100% certainty that this Court will set the FRAND terms for a license to
2 InterDigital's patents. *See, e.g.*, *TCL Commc'n Tech. Holdings v.*
3 *Telefonaktiebolaget Lm Erricsson,* No. SACV 14-341 JVS(DFMx), 2017 WL
4 6611635, at *51-52, *57-58 (C.D. Cal. Dec. 21, 2017) (entering judgment
5 determining the FRAND rate).

6      InterDigital argues that u-blox is not likely to succeed on its breach of
7 contract claim seeking to hold InterDigital to its obligation to ETSI to license its
8 SEPs to u-blox on FRAND terms because u-blox cannot claim that "there is any
9 likelihood that a fact-finder would accept u-blox's proposed terms." ▇▇▇
10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In addition, and in any event, the Court
15 does not need to find that u-blox's proposed terms are FRAND in order for u-blox to
16 succeed on its breach of contract claim. Indeed, it is more likely the Court may not
17 accept either parties' specific offer but, instead, will set the applicable FRAND
18 terms based on the evidence. Accordingly, u-blox is also likely to succeed on its
19 breach of contract claim. Thus, this factor favors granting injunctive relief.

20      InterDigital's argument that there is not a sufficient relationship between the
21 requested injunction and the relief sought in u-blox's Complaint is meritless As
22 recognized in the case cited by InterDigital, "the relationship between the
23 preliminary injunction and the underlying complaint is sufficiently strong where the
24 preliminary injunction would grant 'relief of the same character as that which may
25 be granted finally.'" *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.,* 810
26 F.3d 631, 636 (9th Cir. 2015)(citation omitted).

27      Here, once the court sets the FRAND terms, u-blox will pay the Court-
28 determined FRAND rate to InterDigital and InterDigital will not collect royalties

from u-blox's customers.  This is precisely what u-blox seeks in this motion.  In addition, u-blox's application for an injunctive relief is supported by the same factual allegations concerning a new license agreement contained in u-blox's Complaint.  *See Warren v. Well Fargo & Co.*, Case No.: 3:16-cv-2872-CAB-(NLS), 2017 WL 4541730, at *4 (S.D. Cal. Oct. 11, 2017) (finding a sufficient nexus between plaintiff's application for an injunction and complaint when both were supported by the same factual allegations).

Even InterDigital acknowledges that once the relief in the Complaint is granted, it cannot "double dip" and collect royalty payments from u-blox's customers.  *See* Opposition, Dkt. 34 at 5 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  There is a sufficient "relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation,* 810 F.3d at 636 (citation omitted).

### 2. *u-blox Will Suffer Irreparable Harm*

u-blox's Declarations explain in detail how and why u-blox *will* suffer irreparable harm if the Court does not enjoin InterDigital from contacting u-blox's customers to demand royalty payments from them during the pendency of this action.  The irreparable harm will include the certain loss of customers, goodwill, reputation as a reliable supplier, and ultimately the destruction of its cellular business.  *See, e.g.,* Thiel Decl., Dkt. 7-15 at ¶ 27("the significant investments by u-blox in its technology, business, and customers described above will essentially be lost without any opportunity for recoupment"); *id.* ¶ 29 (explaining that u-blox's customers "rely upon and need to have confidence that their critical component suppliers, such as u-blox, will continue to be licensed . . ."); *id.* ¶ 37 ("It would be difficult to exaggerate the harm to u-blox that will ensue if it loses its cellular customers to competitors."); Murray Decl., Dkt. 7-12 at ¶¶ 25-32.  In fact, u-blox's witnesses provide detailed testimony demonstrating how its customer relationships

and business will be irreparably harmed if its customers are required to pay royalties for products incorporating u-blox modules, including specific incidents of the disruption and confusion occurring when InterDigital sought royalties from those customers in 2017.  *See* Murray Decl., Dkt. 7-12 at ¶¶ 15-22; *id.* ¶ 26 (InterDigital's conduct "would almost certainly lead to the loss of business from current and potential future customers.").

Specific examples of client contacts and resulting loss of goodwill demonstrate irreparable harm.  *See Earthbound Corp. v. MiTek USA, Inc.*, Case No. CV 167223 DMG (JPRx), 2017 WL 2919101, at *14 (C.D. Cal. Feb. 10 2017) (finding irreparable harm from damage to plaintiff's goodwill when defendants reached out to plaintiff's customers); *see also Blindlight, LLC v. Cubbison,* No. LA CV-1703497 JAK (PLAx), 2017 WL 4769460, at *12 (C.D. Cal. July 3, 2017) (finding irreparable harm where defendant communicated with plaintiff's clients who became confused and concerned).[4]  In fact, the loss of customers in 2017 was so imminent that u-blox agreed to a license extension with unfavorable terms.  *See* Murray Decl., Dkt. 7-12 at ¶ 24; Baker Decl., Dkt. 7-2 at ¶¶ 32-33; Thiel Decl. Dkt. 7-15 at ¶ 13.

While InterDigital tries to make much of u-blox citing two cases pre-dating *Winter v. NRDC, Inc*, 555 U.S. 7 (2008), InterDigital conspicuously fails to address any of the post-*Winter* cases recognizing that loss of goodwill and reputation support a finding of irreparable harm.  *See Rackwise v. Archbold*, No. 17-797 WBS

---

[4] The cases cited by InterDigital are distinguishable.  *See Vape Soc'y Supply Corp. v. Zeiadeh*, No. 160191 AG (DFMx), 2017 WL 3000020 at *2 (C.D. Cal. Jan. 9, 2017) (denying injunction based on a lack of evidence that plaintiff owned the intellectual property rights at issue, and when plaintiff relied on declarations of former employees, and a doubtful trademark registration only became effective after litigation commenced); *McDavid Knee Guard, Inc v. Nike USA, Inc*., 683 F. Supp. 2d 740, 749 (N.D. Ill. 2010) (finding that plaintiff did not face an imminent threat of loss of future sales because defendant's sales had not impacted plaintiff's sales).

CKD, 2017 WL 2547040, at *4 (E.D. Cal. June 13, 2017) (finding irreparable harm when conduct would harm "the reputation and goodwill of plaintiff with investors, customers, and the SEC"); *Blindlight, LLC,* 2017 WL 4769460, at *12 (finding irreparable harm from potential harm to plaintiff's business reputation); *Herb Reed Enters., LLC v. Fla. Entm't. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("[e]vidence of a loss of control over business reputation and damage to goodwill may be sufficient to show irreparable harm"). At a minimum, u-blox has sufficiently demonstrated a "threatened loss of prospective customers or goodwill," which constitutes irreparable harm. *See CHR Holdings, Inc.*, 2016 WL 6888175, at *11.

InterDigital argues that loss of customers and goodwill "are monetary injuries that do not constitute irreparable harm." Dkt. 34 at 20. However, loss of goodwill is impossible to quantify and no amount of monetary compensation would make u-blox whole. *See Blindlight, LLC*, 2017 WL 4769460, at *12 (rejecting argument that plaintiff's harm is compensable through monetary damages when defendant's actions "are likely to harm [p]laintiff's goodwill with both particular clients and in the general marketplace."); *eBay, Inc. v. Bidder's Edge, Inc.,* 100 F.Supp.2d 1058, 1066 (N.D.Cal. 2000) ("[h]arm resulting from . . . lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief."); *see also* Thiel Decl., Dkt. 7-15 at ¶ 35 ("it would be impossible for u-blox to recover the goodwill and reputation that u-blox has built up over so many years."); Murray Decl., Dkt. 7-12 at ¶¶ 25-32.

Finally, InterDigital's argument that u-blox cannot establish irreparable harm because u-blox only identified two customers that InterDigital previously interfered with is wrong. InterDigital's Opposition confirms that it intends to demand royalties from *all* of u-blux's customers. This is the exact conduct that u-blox seeks to enjoin. In any event, the Court should consider whether there is a threat of irreparable harm, not the severity or magnitude of the injury. *See Arizona Dream*

*Act Coalition v. Brewer*, 57 F.3d 1053, 1068 (9th Cir. 2014). u-blox also should not have to wait until InterDigital causes an irreparable loss to be entitled to an injunction. *See CHR Holdings, Inc.*, 2016 WL 6888175, at *11 ("[although there is not enough evidence at this time to establish [that defendant] has solicited [[p]laintiff's customers or employees, there is certainly a 'threatened loss of prospective customers or goodwill. . .'"]). u-blox has demonstrated that it will suffer irreparable harm if a preliminary injunction is not granted.

### 3. *The Equities Weigh Heavily in u-blox's Favor*

The balance of equities weigh in u-blox's favor. u-box is a willing licensee and will pay the FRAND rate once it is determined. Thus, u-blox seeks to maintain the status quo so that its business is not destroyed prior to the FRAND rate being determined by this Court. By contrast, once a FRAND rate is determined, InterDigital will be paid all royalties owed by u-blox. Any delay in payment to InterDigital is far outweighed by the irreparable harm u-blox will suffer if an injunction is not granted, including the loss of clients, goodwill, reputation, and destruction of its cellular business. *See Domingue v. Schwarzenegger*, No. C 09-02306 CW, 2010 WL 2673715, at *6 (N.D. Cal. July 2, 2010) (equities weigh in plaintiffs' favor when the injury to defendant is financial); *see also VL v. Wagner*, 66 F. Supp. 2d, 1106, 1122 (N.D. Cal. Oct. 23, 2009) (same); *Huawei Techs., Co. v. Samsung Elecs. Co.,* No. 3:16-cv-02787-WHO, 2018 WL 1784065, at *10 (N.D. Cal. Apr. 13, 2018) ("the Shenzhen Order interfere[s] with 'equitable considerations' by compromising the court's ability to reach a just result in the case before it free of external pressure on [Samsung] to enter into a 'holdup' settlement before the litigation is complete.").[5] In sum, the equities strongly favor u-blox.

While InterDigital tries to innocently describe its prior conduct as

---

[5] InterDigital argues that u-blox seeks "relief for a hypothetical, non-pled tortious interference" claim. u-blox is doing no such thing by seeking to preserve the status quo, and does not have to wait until it is irreparably harmed.

"provid[ing] routine notifications" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ even though InterDigital was well aware that u-blox was and is a willing licensee.  InterDigital's attempts to collect royalties from u-blox's customers in this situation is akin to the conduct of SEP owners who improperly file infringement actions and seek injunctions against willing licensees. *See, e.g.*, *Realtek Semiconductor Corp. v. LSI Corp.,* 946 F.Supp.2d 998, 1006 (N.D.Cal. 2013) (SEP owner's seeking injunctive relief before offering a FRAND license was "inherently inconsistent and a breach of defendants' promise to license the patents on RAND terms.") (citations omitted); *Apple, Inc. v. Motorola, Inc.,* 869 F.Supp.2d 901, 913-14 (N.D. Ill. 2012) (Posner, J.) ("I don't see how, given FRAND, I would be justified in enjoining Apple from infringing the [SEP] unless Apple refuses to pay a royalty . . ."). There is simply no legitimate reason for InterDigital to seek royalties from u-blox's customers or threaten them with injunctions while this litigation is pending.

### 4. *A Preliminary Injunction is in the Public Interest*

As set forth in u-blox's motion, the public has an interest in seeing companies like InterDigital comply with their obligations to license their SEPs at FRAND rates.  Contrary to InterDigital's "free speech" argument, there will be no restraints on speech.  There is also no threat to InterDigital's intellectual property rights because u-blox will pay InterDigital once the FRAND terms are determined.

### C. **u-blox's Application Is Not Overbroad and No Bond Is Needed**

InterDigital argues that "[t]he proposed injunction is also of such extreme vagueness and overbreadth that it cannot be granted . . ." However, InterDigital's claim that it cannot comply with the requested injunction because it does not know u-blox's customers is frivolous.  InterDigital contacted u-blox's downstream customers concerning "products using modules acquired from u-blox." *See* Opposition, Dkt. 34 at 1 (stating that InterDigital provided notifications to its

licensees . . . ███████████████████████████████████████████

███████████) (emphasis added).  In fact, ███████████████████████████████. *See*

Opposition, Dkt. 34 at 6 (stating that InterDigital's ██████████████████████████

████████████████████████████████████████████████████████████████████

(emphasis added).  Mattis Decl., Exh. 15 and 16, Dkt. 34-16,17 ████████████

████████████████.  Thus, InterDigital's argument that it does not know the identity of its customers who incorporate u-*blox* modules is not only implausible, but false.

In any event, assuming *arguendo* u-blox's request is overbroad, it can be appropriately narrowed.  *See Epona v. Cty. of Ventura*, 876 F.3d 1214, n.4 (9th Cir. 2017) ("To the extent the injunctive relief . . . is overbroad, the district court could and should narrow it.") (citation omitted); *World Wrestling Ent., Inc. v. Does*, Case No. 15-cv-01263, 2015 WL 99690312, at *3 (N.D. Cal. Mar. 24, 2015) (limiting proposed order); *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, Case No. C 10-3428 PSG. (N.D. Cal., Jan. 10, 2013) (narrowing injunction "[t]o address these issues").  Finally, no bond should be required as there is no risk that InterDigital will not be paid.  u-blox will pay InterDigital the royalties set by the Court and InterDigital acknowledges that u-blox is a "company with significant assets." In any event, InterDigital's request for a ████████████████████████████████████

████████████████ is truly exorbitant.  Indeed, as demonstrated by u-blox's offer to InterDigital for a new license, it is multiples higher than what can reasonably be FRAND.

### III.    CONCLUSION

For the foregoing reasons, u-blox respectfully requests that a preliminary injunction issue prohibiting InterDigital during the pendency of this action or until a FRAND rate is otherwise determined from demanding royalty payments from u-blox's customers and downstream manufacturers based on products incorporating u-blox technology.

Dated: January 25, 2019     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ Stephen S. Korniczky*
STEPHEN S. KORNICZKY
MARTIN R. BADER
MATTHEW W. HOLDER
DANIEL L. BROWN
RYAN P. CUNNINGHAM

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 25, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

In addition, this motion will be served via personal service with the Summons and Complaint.

By  /s/ *Stephen S. Korniczky*
STEPHEN S. KORNICZKY