1    DAVID S. STEUER, CA Bar No. 127059
2    dsteuer@wsgr.com
    MICHAEL B. LEVIN, CA Bar No. 172329
3    mlevin@wsgr.com
    MAURA L. REES, CA Bar No. 191698
4    mrees@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
5    Professional Corporation
    650 Page Mill Road
6    Palo Alto, California 94304-1050
7    Telephone: (650) 493-9300

8    LUCY YEN, CA Bar No. 224559
    lyen@wsgr.com
9    WILSON SONSINI GOODRICH & ROSATI
10   Professional Corporation
    1301 Avenue of the Americas, 40th Floor
11   New York, New York 10019-6022
    Telephone: (212) 999-5800
12

13   Attorneys for Defendants
    *InterDigital, Inc., InterDigital Communications,*
14   *Inc., InterDigital Technology Corporation,*
    *InterDigital Patent Holdings, Inc., InterDigital*
15   *Holdings Inc. and IPR Licensing, Inc.*

16

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| U-BLOX AG, U-BLOX SAN DIEGO, INC., AND U-BLOX AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERDIGITAL, INC.; INTERDIGITAL COMMUNICATIONS, INC.; INTERDIGITAL TECHNOLOGY CORPORATION ; INTERDIGITAL PATENT HOLDINGS, INC. ; INTERDIGITAL HOLDINGS, INC.; and IPR LICENSING, INC., <br><br> Defendants. | No.: 19-cv-00001-CAB-BLM <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> **JURY TRIAL DEMANDED** <br><br> **Hon. Cathy Ann Bencivengo** <br> **Courtroom: 4C** <br> **Date: April 1, 2019** <br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................1

II.  BACKGROUND AND PROCEDURAL HISTORY ......................................2

    A.   The Parties..........................................................2

    B.   Relationship Between InterDigital and U-blox ........................2

    C.   The ETSI FRAND Commitment ...........................................3

III. ARGUMENT ..................................................................5

    A.   Legal Standard ......................................................5

    B.   Promissory Estoppel Is Not a Valid Claim Under Applicable French Law..........................................................7

    C.   The Claim for Monopolization Under Sherman Act Section 2 Should Be Dismissed Pursuant to Rule 12(b)(6).......................7

        1.   U-blox Does Not Plead Harm to Competition ........................8

        2.   U-blox Does Not Adequately Allege Unlawful Conduct........10

        3.   U-blox Fails to Allege Fraud With Particularity Pursuant to Rule 9(b) ...................................................11

        4.   U-blox Fails to Adequately Allege Intent to Defraud .............12

        5.   U-blox Fails to Allege Injury In Fact ........................14

    D.   The Third Cause of Action Seeking a Declaratory Judgment Should be Dismissed for Lack of Jurisdiction under Rule 12(b)(1). ..........................................................15

IV.  CONCLUSION ...............................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174 (9th Cir. 2010) .................. 6, 18

*Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061 (W.D.
Wis. 2012) ...................................................................................................... 14

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL
7989412 (W.D. Wis. Nov. 8, 2012) ................................................................ 21

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-CV-1846, 2012 WL
1672493 (N.D. Cal. May 14, 2012) ................................................................... 7

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL
4948567 (N.D. Cal. Oct. 18, 2011) ................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5

*ASUS Comput. Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, Doc.
No. 367 (N.D. Cal. Dec. 20, 2018) .................................................................... 7

*Aydin Corp. v. Union of India*, 940 F.2d 527 (9th Cir. 1991) ..................................... 6

*Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925 (N.D. Cal.
2012) .......................................................................................................... 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 5

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) .................... *passim*

*Cal. Comput. Prods., Inc. v. IBM Corp.*, 613 F.2d 727 (9th Cir. 1979) ..................... 8

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir.
2010) .................................................................................................................. 6

*Dreamstime.com LLC v. Google, LLC*, No. 18-1910, 2019 WL 341579
(N.D. Cal. Jan. 28, 2019) ................................................................................. 11

*Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000
(9th Cir. 2009) .................................................................................................. 17

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) ....................................... 5

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir.
2009) .......................................................................................................... 12, 13

*Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075 (9th Cir.
2005) ................................................................................................................ 12

*Gerlinger v. Amazon.com, Inc.*, No. 02-5238 MHP, 2005 WL 3681827
(N.D. Cal. Nov. 1, 2005), *aff'd*, 526 F.3d 1253 (9th Cir. 2008) .................... 15

-ii-

*Godo Kaisha IP Bridge 1 v. TCL Commc'ns Tech. Holdings, Inc.*, No. 15-634-JFB-SRF, ECF No. 367 (D. Del. Feb. 12, 2018)................... 10, 13, 14

*Gonzalez v. JAG Trucking, Inc.*, No. 1:18-cv-01046-LJO-JLT, 2019 WL 528441 (E.D. Cal. Feb. 11, 2019) ............................................ 18

*Gorlick Dist. Ctrs., LLC v. Car Sound Exhaust Sys. Inc.*, 723 F.3d 1019 (9th Cir. 2013) ............................................................ 8

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc) ............................................................................. 18

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374 (3d Cir. 2005) .................. 8

*Hillblom v. United States*, 896 F.2d 426 (9th Cir. 1990) .......................................... 6

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 18-00243, 2018 WL 5831289 (E.D. Tex. Nov. 7, 2018)..................................... 15

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243-JRG, ECF No. 457 (E.D. Tex. Feb. 15, 2019) .......................... 16

*Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934 (N.D. Cal. 2018) ............................................................... 9, 10, 11, 13, 14

*In re BP Lubricants USA Inc.*, 637 F.3d 1307 (Fed. Cir. 2011)................................ 13

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015)................ 14

*In the Matter of Certain Wireless Devices With 3G and/or 4G Capabilities and Components Thereof*, Inv. No. 337-TA-868, Initial Determination, 2014 WL 2965327 (June 13, 2014).......................... 17

*In the Matter of Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800, Initial Determination, 2013 WL 3961230 (June 28, 2013)............................................................................. 16

*InterDigital Commc'ns, Inc. v. Nokia Corp.*, No. 13-cv-00009-RGA, Order, ECF No. 51 (D. Del. Jul. 12, 2013) ......................................... 7

*InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-cv-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014)...................................... 20

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) ......................................... 6

*NYNEX Corp. v. Discon*, 525 U.S. 128 (1998)............................................................ 9

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005) .................. 6, 7, 19

*Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008) ........................................... 9, 10

*San Diego Branch of NAACP v. Cty. of San Diego*, No. 16-CV-2575 JLS (MSB), 2019 WL 329539 (S.D. Cal. Jan. 25, 2019) ...................... 6

-iii-

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003) ...................... 6

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ............................................ 8

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................... 5

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ........................................... 5

*TCL Commc'ns Tech. Holdings Ltd. v.Telefonaktiebolaget LM Ericsson*, No. 14-0341, 2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) ................................................................................ 13

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS, 2018 WL 4488286 (C.D. Cal. Sept. 14, 2018) ................................................................ 16

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir. 2016) ................................................................ 12

*U.S. v. Grinnell Corp.*, 384 U.S. 563 (1966) .................................................. 8

*U.S. v. Colgate & Co.*, 250 U.S. 300 (1919) .................................................. 11

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ...................................................................... 8, 11

*Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ........................................................................................... 5

**STATUTES**

15 U.S.C. § 15(a) ....................................................................................... 14

28 U.S.C. § 2201(a) ................................................................................... 18

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................... 1, 11

Fed. R. Civ. P. 12 ............................................................................... *passim*

**MISCELLANEOUS**

Phillip E. Areeda et al., Antitrust Law .................................................. 14

-iv-

## I.      INTRODUCTION

U-blox's Second Cause of Action (Promissory Estoppel) and Fourth Cause of Action (Sherman Act Section 2) should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  The "promise" on which u-blox bases the promissory estoppel claim is reflected in a licensing declaration with an express governing law clause designating French law.  Numerous courts have rejected the exact claim raised by u-blox under the ETSI licensing declaration on the ground that promissory estoppel is unavailable as a matter of French law.  The Fourth Cause of Action under Sherman Act Section 2 also fails to state a claim.  U-blox does not plausibly describe harm to competition or anticompetitive conduct in the Complaint, both required elements of a monopolization claim.  U-blox also does not adequately allege fraud against a standards-setting organization with the particularity required by Rule 9(b), and also fails to allege intent to deceive. Further, the Complaint is devoid of allegations demonstrating injury-in-fact.

The Court should also dismiss u-blox's Third Cause of Action seeking a declaratory judgment of FRAND license terms for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  U-blox filed this lawsuit prematurely, without making genuine, good faith efforts to negotiate a new license.  By "jumping the gun" and suing without warning, u-blox has not allowed for an adequate record to be developed, and the claim is not ripe.  Even if the declaratory judgment claim were ripe, however, the Court should decline to exercise jurisdiction as a discretionary matter.  The requested declaratory judgment would serve no useful purpose, and there is a superior mechanism available:  InterDigital has offered to engage in a binding arbitration to determine FRAND terms. Arbitration offers many advantages, including straightforward cross-border enforcement, as well as an expedient and economical process that does not burden judicial resources.  Accordingly, the Court should, in its discretion, decline to entertain the Third Cause of Action.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   The Parties

Defendant InterDigital, a publicly-traded American research and development firm headquartered in Delaware, is a pioneer in developing wireless telecommunications technologies.  Founded in 1972, InterDigital is listed on NASDAQ and is included in the S&P MidCap 400 index.  Doc. No. 33-1 at 3. InterDigital's patent portfolio includes thousands of U.S. and foreign issued patents and patent applications relevant to a diverse range of hardware and software technologies important to mobile devices, including cellular and WiFi connectivity, video codecs, displays, user interface, sensors, and location services. *Id*.  InterDigital's dozens of current and past licensees include major companies such as Apple, Samsung, Huawei, LG Electronics, Ericsson, Panasonic, Sharp, Fujitsu, Kyocera, and Sony.  *Id*. at 5.

Plaintiff u-blox AG is a Swiss company with American subsidiaries that sells products with cellular capabilities.  Doc. No. 1 at ¶¶ 21-28.  U-blox was previously an InterDigital licensee until December 31, 2018, when its license expired.  U-blox is continuing to sell cellular products notwithstanding its unlicensed status.

### B.   Relationship Between InterDigital and U-blox

InterDigital and u-blox engaged in bilateral, arm's length negotiations that led to the Patent License Agreement (PLA) signed in March 2012, pursuant to which u-blox was licensed to InterDigital's 2G, 3G, and 4G cellular patents.  Doc. No. 2-4 ("PLA").  The license expired on December 31, 2016 after u-blox ignored InterDigital's efforts to negotiate a renewal.  Doc. No. 33-2 ¶¶ 11-13.  While the parties reached agreements on extensions of the license through December 31, 2018, u-blox chose not to enter into a new long-term license with InterDigital. Doc. No. 1, ¶¶ 109, 125.  Instead, after engaging in various delay tactics and then

making just one license proposal, u-blox filed this lawsuit without warning on January 1, 2019.  Doc. No. 33-2 ¶¶ 25-28, 34.

At the same time, u-blox filed an *ex parte* application for a temporary restraining order, which falsely accused InterDigital of "threatening" its end customers (when, in fact, InterDigital had no contact with them at all).  Doc. Nos. 2; 33-2 ¶¶ 44-45.  The Court denied the TRO application on February 12, 2019, finding that u-blox had not demonstrated a likelihood of success on the merits and that there was no showing of irreparable harm.  Doc. No. 49.

InterDigital has offered to resolve this dispute via a streamlined arbitration to determine FRAND license terms, whether pursuant to the PLA's arbitration clause or otherwise, but to date u-blox has failed to provide any substantive response.  Doc. No. 33-2 ¶¶ 35-36.

### C.     The ETSI FRAND Commitment

The cellular patents at issue in this case relate to 2G, 3G, and 4G cellular standards promulgated by 3GPP and ETSI.  Doc. No. 1 ¶¶ 55-57.  The relevant FRAND commitments are reflected in the written declaration forms InterDigital submitted to ETSI.  The forms are included as annexes to ETSI's IPR Policy. They have two parts: (1) the IPR Information Statement, which includes a list of patents as to which it is the patent owner's "present belief" that the patents "*may be or may become* ESSENTIAL" to a standard; and (2) the Licensing Declaration, which states:  "*To the extent* that the IPR(s) disclosed in the attached IPR Information Statement Annex *are or become, and remain ESSENTIAL* . . .  the Declarant and/or its AFFILIATES are (1) *prepared to grant* irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy. . . ."   *E.g.*, Doc. No. 1-18 at 2 (emphasis added).  Clause 6.1 provides for an "undertaking in writing that [the declarant] is *prepared to grant* irrevocable licences on fair, reasonable and non-discriminatory

-3-

("FRAND") terms and conditions."  ETSI IPR Policy[1] at Clause 6.1 (emphasis added).  The ETSI IPR Policy is governed by the law of France.  *Id*. § 12.

As is clear from the documents u-blox relied on and attached to its Complaint, any suggestion that InterDigital represented or declared to ETSI that any particular patent is essential is contradicted by the express terms of the IPR Information Statements, which state instead that it is InterDigital's present belief that the disclosed patents "may be or may become" essential.  And the express, written Licensing Declaration by its plain terms does not apply to all disclosed patents, but only "to the extent" such patents  "are or become, and remain" essential.  Accordingly, essentiality is a condition precedent of any licensing obligation.

The ETSI IPR Policy expressly sets forth the Policy's goals. Its objective is to adopt "solutions which best meet the technical objectives" of the telecommunications sector, and:

> In achieving this objective, the ETSI IPR POLICY *seeks a balance between the needs of standardization for public use* in the field of telecommunications and *the rights of the owners of IPRs*.
> . . . .
> *IPR holders* whether members of ETSI and their AFFILIATES or third parties, *should be adequately and fairly rewarded for the use of their IPRs* in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

*Id*. §§ 3.1- 3.2 (emphasis added).  Thus, contrary to u-blox's suggestion that the ETSI IPR Policy is concerned only with making patents available to manufacturers, it actually expressly provides that the interests of patent owners are to be equally protected, including through being adequately and fairly compensated for use of their patents.

---

[1] ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

## III.   ARGUMENT

### A.   Legal Standard

A claim should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Accordingly, while the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations.  *Id*. at 678-79; *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Further, on a motion under Rule 12(b)(6), the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1110 (N.D. Cal. 2003) ("Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support plaintiff's claim.").

-5-

A claim may also be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction will be granted if the Complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Further, in considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  When a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).

A claim should be dismissed for lack of jurisdiction on ripeness grounds where it pleads facts that have not yet matured to a point where judicial action is appropriate.  *See Aydin Corp. v. Union of India*, 940 F.2d 527, 529 (9th Cir. 1991).  "The ripeness doctrine demands that . . . litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical."  *San Diego Branch of NAACP v. Cty. of San Diego*, No. 16-CV-2575 JLS (MSB), 2019 WL 329539, at *8 (S.D. Cal. Jan. 25, 2019), quoting *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990).  Ripeness involves consideration of two factors: "the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration."  *Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (citation, internal quotations omitted).  However, even where ripeness is found, a claim seeking a declaratory judgment is subject to a further inquiry into the discretionary factors affecting whether the Court should exercise jurisdiction.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) ("Despite a conclusion that the case is ripe, the Declaratory Judgment Act requires further

analysis in connection with the district court's discretion . . . as to whether or not to exercise jurisdiction.").

## B.   Promissory Estoppel Is Not a Valid Claim Under Applicable French Law

U-blox's promissory estoppel claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  This claim is based on a "promise" that is found in the written ETSI licensing declaration that is governed by French law. Doc. No. 1 ¶ 143; *see also e.g.*, Doc. No. 1-18 (ETSI licensing declaration reflecting commitment to be prepared to grant licenses on FRAND terms and conditions expressly provides it is "governed by the law of France").  Under French law, promissory estoppel is not a valid cause of action.  Laithier Decl., ¶¶ 8-15.  Numerous courts have dismissed the identical claim raised by u-blox as unavailable under French law.  *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-CV-1846, 2012 WL 1672493, at *15 (N.D. Cal. May 14, 2012) (dismissing promissory estoppel claim based on ETSI licensing declaration because "French law does not recognize a substantive claim for promissory estoppel"); *InterDigital Commc'ns, Inc. v. Nokia Corp.*, No. 13-cv-00009-RGA, Order, ECF No. 51 (D. Del. Jul. 12, 2013) (dismissing Counterclaim IV for promissory estoppel against InterDigital based on ETSI FRAND licensing declaration); *ASUS Comput. Int'l v. InterDigital, Inc.*, No. 15-cv-01716-BLF, Doc. No. 367 at 24-25 (N.D. Cal. Dec. 20, 2018) (granting summary judgment that claim for promissory estoppel based on ETSI FRAND licensing declaration is unavailable as a matter of law).  The Court should likewise dismiss u-blox's Second Cause of Action based on promissory estoppel.

## C.   The Claim for Monopolization Under Sherman Act Section 2 Should Be Dismissed Pursuant to Rule 12(b)(6)

Monopolization under Section 2 of the Sherman Act requires: 1) the possession of monopoly power (also called market power) in a relevant market; 2)

1   willful acquisition or maintenance of that power as distinguished from growth or

2   development as a consequence of a superior product, business acumen, or historic

3   accident, and 3) causal "antitrust" injury.  *Cal. Comput. Prods., Inc. v. IBM Corp.*,

4   613 F.2d 727, 735 (9th Cir. 1979); *U.S. v. Grinnell Corp.*, 384 U.S. 563, 571

5   (1966).  Antitrust injury requires a showing of: "(1) unlawful conduct, (2) causing

6   an injury to the plaintiff, (3) that flows from that which makes the conduct

7   unlawful, and (4) that is of the type the antitrust laws were intended to prevent."

8   *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).  Further, antitrust injury

9   requires demonstration of harm to competition in the market as a whole, not

10  merely harm to a competitor.  *Gorlick Dist. Ctrs., LLC v. Car Sound Exhaust Sys.*

11  *Inc.*, 723 F.3d 1019, 1024 (9th Cir. 2013).

12                    **1.   U-blox Does Not Plead Harm to Competition**

13          U-blox's Sherman Act claim does not adequately allege harm to

14  competition.  Rather, u-blox's Complaint describes, at most, a contractual dispute,

15  pursuant to which u-blox alleges that royalties sought by InterDigital are too high,

16  allegedly in breach of a contractual FRAND commitment.  Doc. No. 1 at ¶ 134

17  (alleging that InterDigital sought "excessive" royalties in contravention of FRAND

18  commitments).  However, courts have rejected the premise that allegedly higher

19  prices equate to harm to competition for purposes of an antitrust claim.  *See*

20  *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005)

21  ("Competitive markets are characterized by both price and quality competition, and

22  a firm's comparatively high price may simply reflect a superior product."); *see*

23  *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398,

24  407 (2004) ("[M]ere possession of monopoly power, and the concomitant charging

25  of monopoly prices, is not only not unlawful; it is an important element of the free-

26  market system.").

27          U-blox's antitrust claim is premised on the *Broadcom v. Qualcomm* case.  In

28  *Broadcom*, the Third Circuit allowed a Sherman Act claim to go forward at the

                                                      -8-

pleading stage where the plaintiff alleged as anticompetitive conduct: "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms;" "an SDO's reliance on that promise when including the technology in a standard;" and "subsequent breach of that promise." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); Doc No. 1 at ¶¶ 171-72 (conclusory allegations of intentionally false FRAND declarations, reliance by ETSI, and breach of promise by seeking purportedly "supracompetitive" royalties). *Broadcom* is an out-of-circuit case that is not binding on this Court and has been subsequently criticized.  In *Rambus v. FTC*, the D.C. Circuit disagreed with *Broadcom's* implication that a monopolization claim can exist where the alleged exclusionary behavior had no effect on competitive structure, as it is inconsistent with Supreme Court case law.  *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) ("[T]o the extent that [*Broadcom*] may have rested on a supposition that there is a cognizable violation of the Sherman Act when a lawful monopolist's deceit has the effect of raising prices (without an effect on competitive structure), it conflicts with *NYNEX*"); *see also NYNEX Corp. v. Discon*, 525 U.S. 128 (1998) (fraud that raised prices cannot be Sherman Act violation in absence of effect on competition).[2]  The "patent hold up" theory adopted by the *Broadcom* court does not describe in any coherent manner how the competitive structure of the market is affected, particularly given that plaintiffs can seek to enforce FRAND commitments as a contractual matter if they are not adhered to.

In the recent *Huawei v. Samsung* case, a district court in the Ninth Circuit also rejected the *Broadcom* theory that intentional false promises to a standards-

---

[2] In *Rambus*, the D.C. Circuit reversed the FTC's decision finding Rambus liable for Sherman Act § 2 violations – a decision on which the *Broadcom* court had heavily relied in developing its "patent hold-up" theory.  *Broadcom*, 501 F.3d at 311-14. Accordingly, *Broadcom* rests on a questionable foundation, as its analysis was based on an FTC decision that the *Broadcom* court thought was a "landmark" decision— but was actually later reversed on appeal.

-9-

setting organization can establish a Sherman Act claim, because no harm to competition is shown thereby:

> [Plaintiff] has not offered any evidence of [defendant's] fraudulent intent, but even if it had, it would still be insufficient to establish unlawful exclusionary conduct. *See Rambus Inc. v. F.T.C.*, 522 F.3d 456, 466, 380 U.S. App. D.C. 431 (D.C. Cir. 2008) ("[A]n otherwise lawful monopolist's end-run around price constraints, even when deceptive or fraudulent, does not alone present a harm to competition in the monopolized market.").

*Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 955 (N.D. Cal. 2018) (granting summary judgment against Sherman Act monopolization claim based on alleged "false FRAND promises" to ETSI).

And within the Third Circuit, a district court recently dismissed a Sherman Act antitrust claim based on *Broadcom*, noting that the antitrust plaintiff "does not cite to any allegations in the amended counterclaims that support harm to competitive process, but rather makes a recitation of the four-part test set forth in *Broadcom*." *Godo Kaisha IP Bridge 1 v. TCL Commc'ns Tech. Holdings, Inc.*, No. 15-634-JFB-SRF, ECF No. 367 (D. Del. Feb. 12, 2018) ("IP Bridge").[3] The court rejected plaintiff's argument that "'the very act of demanding non-FRAND royalties for use of a SEP, and/or seeking an injunction for infringement of such a patent' sufficiently alleges anticompetitive behavior that harms competition." *Id*. at 14. Likewise, here, u-blox's allegations provide nothing more than conclusory recitations of the elements listed in *Broadcom*, without any plausible showing of harm to competition.

## 2. U-blox Does Not Adequately Allege Unlawful Conduct

U-blox's Complaint also does not allege unlawful anticompetitive conduct as required for a monopolization claim. U-blox's Sherman Act claim mistakenly presumes that InterDigital has an ***antitrust*** duty to deal with u-blox. However, a

---

[3] The magistrate's order was adopted by the district court at 2018 U.S. Dist. LEXIS 38506, at *2.

-10-

simple contractual commitment does not constitute an antitrust duty to deal, and hence, the alleged breach of a contractual commitment is not sufficient to support a Sherman Act claim.  As the Supreme Court held in *Trinko*:

> [A]s a general matter, the Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."

540 U.S. at 408, quoting *U.S. v. Colgate & Co*., 250 U.S. 300, 307 (1919). Although the refusal to deal that was alleged in *Trinko* to be unlawful anticompetitive conduct may have had an exclusionary effect, it nevertheless was held not to be a "recognized antitrust claim." *Trinko*, 540 U.S. at 410.  U-blox's Sherman Act monopolization claim should equally be rejected.  *Cf. Huawei*, 340 F. Supp. 3d at 953 ("Samsung has not proven that Huawei 'acquired or maintained' its monopoly power through exclusionary conduct" based on a refusal to deal); *see also Dreamstime.com LLC v. Google, LLC*, No. 18-1910, 2019 WL 341579, at *6-8 (N.D. Cal. Jan. 28, 2019) (dismissing Sherman Act Section 2 claim without leave to amend where anticompetitive acts not adequately alleged).

### 3.   U-blox Fails to Allege Fraud With Particularity Pursuant to Rule 9(b)

Even if the Court were to follow *Broadcom,* that theory "sounds in fraud." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567, at *4 n.5 (N.D. Cal. Oct. 18, 2011).   Accordingly, u-blox must plead the circumstances of the alleged fraud with particularity under Federal Rule of Civil Procedure 9(b).  *Id*.  Although u-blox claims that the alleged "fraud" consisted of making false FRAND declarations in order to induce ETSI to select InterDigital's patented technology over other alternative technology, u-blox fails to identify which of the disclosed patents were selected over other viable alternatives, and also fails to identify what those alternatives were.  *See id*. at *5 (requiring plaintiff to allege specific essential patents and alternative technologies).  Instead, u-blox

-11-

simply points generally to InterDigital's ETSI disclosures listing hundreds of patents that InterDigital believed may be or may become essential.  This is plainly insufficient when u-blox simultaneously pleads that it does not concede that any of the disclosed patents are essential.  Doc. No. 1 at fn.2.  A *Broadcom* claim requires that the plaintiff plead that the SSO has "includ[ed] the technology in a standard," such that the plaintiff has "become locked in to a standard requiring the use of a competitor's patented technology" -- that is, the patented technology in the relevant market must be essential to a standard, in order for "lock in" to occur. *Broadcom*, 501 F.3d at 314, 315.  U-blox's vague and contradictory allegations as to which InterDigital patents (if any) became essential in a manner so as to cause "lock-in," when selected over other, available (unidentified) alternative technologies, are not sufficient to state a claim under a *Broadcom* theory.

### 4.  U-blox Fails to Adequately Allege Intent to Defraud

U-blox's fraud theory under *Broadcom* is based on a claim that InterDigital made a contractual promise to be prepared to grant licenses on FRAND terms without intending to perform.  Doc. No. 1 at ¶ 161. "[W]here allegedly fraudulent misrepresentations are promises made in a contract, a party claiming fraud must prove fraudulent intent at the time of contract execution; evidence of a subsequent, willful breach cannot sustain the claim."  *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc*., 822 F.3d 650, 658 (2d Cir. 2016); *see also Fanucchi & Limi Farms v. United Agri Prods*., 414 F.3d 1075, 1088 (9th Cir. 2005) ("mere nonperformance is not enough to show intent to defraud.").

"Although prevailing Ninth Circuit law permits a plaintiff to allege the mere existence of intent, the Federal Circuit requires parties to allege facts sufficient to raise the inference of intent." *Barnes & Noble, Inc. v. LSI Corp*., 849 F. Supp. 2d 925, 938 (N.D. Cal. 2012) (applying Federal Circuit pleading standard to claim of fraud based on nondisclosure of patents to standards setting organization), citing *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1326-1327 (Fed. Cir.

-12-

2009).  The Federal Circuit has held that "*Exergen's* pleading requirements apply to **all claims** under Rule 9(b), not just inequitable conduct cases." *In re BP Lubricants USA Inc*., 637 F.3d 1307, 1311 (Fed. Cir. 2011) (emphasis added). Given the Federal Circuit's direction that "its law may apply across the board to fraud claims in patent cases," even where a fraud claim "[does] not derive from any patent-specific context," the Court should apply the Federal Circuit pleading standard.  *Barnes & Noble*, 849 F. Supp. 2d at 935.

U-blox's Complaint does not include facts sufficient to raise the inference that InterDigital's ETSI licensing declarations were intentionally false **when made**. At most, u-blox alleges later breaches of a FRAND commitment – but subsequent nonperformance does not demonstrate that a promise was false when made.  U-blox's theory thus amounts to improper "bootstrapping of a breach of contract case" into an antitrust claim.  *TCL Commc'ns Tech. Holdings Ltd. v.Telefonaktiebolaget LM Ericsson*, No. 14-0341, 2016 WL 7049263, at *6 (C.D. Cal. Aug. 9, 2016) (granting summary judgment to defendant on unfair competition claim where no intentionally false promise to ETSI was shown).  As the court noted:

> [A]s the *Broadcom* court made the "intentionally false promise" and subsequent "breach of that promise" two separate elements, it is clear that there needs to be some other conduct by [Defendant] than mere breach of its FRAND obligations.  501 F.3d at 314.  In short, [Plaintiff] fails to satisfy the test under *Broadcom* . . . . [Plaintiff] has not shown, by any evidence, an intentionally false promise to license essential proprietary technology on FRAND terms.

*Id*.; *see also IP Bridge* at 14 (dismissing antitrust claim for lack of anticompetitive conduct because "*Broadcom* cannot be expanded to reach FRAND violations after the standard's adoption."); *Huawei*, 340 F. Supp. 3d at 954.

Thus, a Sherman Act claim based on *Broadcom* should be rejected where the plaintiff cannot "support its claim that [defendant] made intentionally false promises to ETSI." *Huawei*, 340 F. Supp. 3d at 954.  The court in *Huawei* found

that such a claim was implausible where the defendant "has licensed its SEPs to other entities as part of its commitments to ETSI" (*id*.)– something InterDigital undisputedly has done on dozens of occasions.  Doc. No. 33-1 at 5.  The court also identified other facts "negating any possible inference that [defendant] never intended to abide by its FRAND obligations," including that "[defendant] has repeatedly offered to submit this dispute to binding arbitration."  *Huawei,* 340 F. Supp. 3d at 955.  Likewise, here, InterDigital has offered binding arbitration of the parties' FRAND dispute, but u-blox has failed to respond.  U-blox's Complaint simply fails to allege facts sufficient to raise an inference of intent to breach FRAND commitments at the time the commitments were made.

### 5.   U-blox Fails to Allege Injury In Fact

Section 4 of the Clayton Act allows private party antitrust actions to be initiated by any person "injured in his business or property" by reason of antitrust law violations.  15 U.S.C. § 15(a).  Thus, a Sherman Act plaintiff must demonstrate injury-in-fact in addition to antitrust injury.  *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 914 (9th Cir. 2015).  Injury-in-fact requires the plaintiff itself to have suffered an injury causally connected to the antitrust violation.  *Id*.; *see also* Phillip E. Areeda et al., Antitrust Law ¶ 335c2, at 80 (Vol. IIA, 4th ed. 2014) ("The plaintiff must show actual injury that was 'caused' by the violation.").

Here, u-blox's Complaint includes no plausible allegations demonstrating that u-blox has been (or may imminently be) injured by InterDigital's allegedly anticompetitive actions.  U-blox has refused InterDigital's so-called "royalty demands" and has not paid any royalties for sales made since its license expired on December 31, 2018.  *See IP Bridge* at 22 (dismissing Sherman Act claim on grounds of no injury-in-fact where plaintiff had not paid any "greater than FRAND" royalties; *Apple, Inc. v. Motorola Mobility, Inc*., 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012) (granting summary judgment of no antitrust injury where "Apple refused to pay the 2.25% royalty rate that Motorola demanded and

-14-

continued to manufacture and market its products despite Motorola's demands.");
*see also Gerlinger v. Amazon.com, Inc*., No. 02-5238 MHP, 2005 WL 3681827, at
*2 (N.D. Cal. Nov. 1, 2005) (no injury-in-fact where plaintiff failed to show
"actual economic damage"), *aff'd*, 526 F.3d 1253, 1255 (9th Cir. 2008).
Accordingly, InterDigital's alleged "non-FRAND" offers for a renewal of u-blox's
license have caused no economic harm to u-blox.

Further, u-blox has confirmed that its claims in this case are not premised on
seeking a refund or damages based on royalties previously paid to InterDigital
under the 2012 PLA or its amendments.  Rees Decl., Ex. B.  InterDigital's counsel
engaged in meet and confer discussions with u-blox's counsel to ascertain whether
u-blox intended to assert injury based on payments made under the 2012 PLA,
because such a claim would be subject to the PLA's arbitration clause, which
survives expiration or termination of the PLA.  *See* PLA §§ 5.2, 6.25; *see also*
*HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 18-00243, 2018 WL 5831289,
at *10 (E.D. Tex. Nov. 7, 2018) (granting motion to compel arbitration of Sherman
Act claims under arbitration clauses in expired patent license agreements where
"HTC claims that its past royalty payments to Ericsson were non-FRAND and
demands a refund of any excess payments").  As u-blox has agreed it is not seeking
a refund of excess payments made under the PLA, there is no claim of injury-in-
fact that can be derived from past payments.  Thus, the Complaint is devoid of any
allegations of injury in fact, and the Sherman Act claim should be dismissed for
failure to plead this essential element.

### D. The Third Cause of Action Seeking a Declaratory Judgment Should be Dismissed for Lack of Jurisdiction under Rule 12(b)(1).

InterDigital and u-blox were able to reach agreement on the PLA in 2012 via
bilateral, arm's-length negotiation.  The parties also reached license extension
agreements in August 2017 and October 2018, after which the license expired on
December 31, 2018.  Doc No. 33-2 ¶¶ 22, 31. The parties had barely begun to

-15-

negotiate the terms of a license extending past December 31, 2018 when u-blox filed this lawsuit without warning immediately upon expiration of the license. The Second Amendment to the PLA was executed in October 2018 and, thereafter, the parties had each exchanged just one letter setting forth their positions with respect to the terms of a new license. *See* Doc. No. 1 at ¶¶ 126-27; Doc. No. 33-2 ¶¶ 31-34. InterDigital is fully prepared to reach another license agreement through negotiation if given the opportunity. InterDigital has also offered to engage in a streamlined binding arbitration to have neutral arbitrators determine the terms of a new license in an expedient and efficient manner, but u-blox has not even responded to InterDigital's arbitration proposal. Doc. No. 33-2 ¶¶ 35-36.

U-blox's Third Cause of Action seeking a declaratory judgment setting "FRAND terms and conditions" for a new license is not ripe for adjudication. The "prepared to grant" language in the ETSI IPR undertaking, as interpreted under French law, means that the patent owner and the standards implementer must both negotiate in good faith toward a license on FRAND terms. *In the Matter of Certain Wireless Devices With 3G Capabilities*, Inv. No. 337-TA-800, Initial Determination, 2013 WL 3961230, at *232 (June 28, 2013) (ETSI FRAND commitment "imposes on both negotiating parties a duty to negotiate in good faith."); *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS (DFMX), 2018 WL 4488286, at *55 (C.D. Cal. Sept. 14, 2018) (finding ETSI FRAND commitment imposes "mutual duty of the parties to negotiate in good faith"); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243-JRG, ECF No. 457 (E.D. Tex. Feb. 15, 2019) (jury verdict finding that licensee "breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular patents"). There is nothing in the ETSI FRAND commitment that excuses a prospective licensee from seeking to reach a license by negotiation. Indeed, as explained in the ETSI IPR FAQ:

1
2
> It is necessary to obtain permission to use patents declared as essential to ETSI's standards. To this end, each standard user should seek directly a license from a patent holder.

3
> . . . .

4
5
6
7
> Any firm interested in obtaining patents declared essential to ETSI standards shall not pay any consideration to ETSI but to the patents holders. To this end, the concerned firm has to enter into negotiation with the companies holding patents in order to obtain licenses for the use of the patented technology included in, and essential for the implementation of an ETSI standard.

8
Rees Decl. Ex. A; *see also In the Matter of Certain Wireless Devices With 3G*

9
*and/or 4G Capabilities and Components Thereof*, Inv. No. 337-TA-868, Initial

10
Determination, 2014 WL 2965327, at *78 (June 13, 2014) ("The ETSI IPR Policy

11
requires companies that wish to use the IPR covered by the agreements to contact

12
the owner of the IP, and take a license.").

13
Here, u-blox alleges only the most cursory effort to engage with InterDigital

14
on substantive terms for a license extending past December 2018.  That effort

15
consisted of a single letter that u-blox sent to InterDigital at the end of November

16
2018—a letter drafted with notable carelessness, as reflected by several obvious

17
errors therein.  Doc. No. 2-3 at 11; Doc No. 1 ¶ 126.  U-blox's hastily filed lawsuit,

18
commenced at the very moment the license expired, does not give the Court an

19
adequate record on which to assess the good faith of the parties' license

20
negotiations.  Particularly where a claim involves a party's good faith course of

21
conduct, a lawsuit filed before any meaningful record is developed is unlikely to be

22
ripe.  For example, in assessing the ripeness of a claim that involved whether a

23
party made good faith efforts to repay a loan, the Ninth Circuit found that

24
immediately filing the claim before such efforts could be made would raise

25
significant ripeness concerns.  *See Educ. Credit Mgmt. Corp. v. Coleman (In re*

26
*Coleman)*, 560 F.3d 1000, 1010 (9th Cir. 2009) (if "debtor files for bankruptcy

27
immediately upon graduating from college, it will likely be necessary to wait the

28
duration of the plan before a good faith determination is possible.").  This case

-17-

1   simply does not satisfy the ripeness factors of (1) fitness of the issues for judicial

2   decision, and (2) hardship to the parties of withholding court consideration.

3   *Addington*, 606 F.3d at 1179.  Determining "FRAND license terms" is an

4   extraordinarily complicated task better suited for negotiation between the parties

5   than for judicial determination.  And, as demonstrated by u-blox's unsuccessful

6   TRO application, there is no imminent harm or hardship to u-blox when it is

7   continuing to sell cellular products without paying associated royalties following

8   the expiration of its license.  Doc. No. 49.

9          However, even if the dispute raised by u-blox meets the test for

10  constitutional ripeness under Article III's "case or controversy" requirement, there

11  is a second step of the analysis that must be satisfied before u-blox's claim can

12  proceed.  The Declaratory Judgment Act provides that "[i]n a case of actual

13  controversy within its jurisdiction. . . any court of the United States . . . *may*

14  declare the rights and other legal relations of any interested party seeking such

15  declaration."  28 U.S.C. § 2201(a) (emphasis added).  Thus, in addition to finding

16  that constitutional requirements are met, the district court must also be satisfied, in

17  its discretion, that entertaining the action is appropriate.  *Gov't Employees Ins. Co.*

18  *v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc) ("[T]he Declaratory

19  Judgment Act is deliberately cast in terms of permissive, rather than mandatory,

20  authority") (quotation omitted). Thus, the Declaratory Judgment Act "gives federal

21  courts discretion to make a declaration of rights but does not impose a duty to do

22  so."  *Gonzalez v. JAG Trucking, Inc.*, No. 1:18-cv-01046-LJO-JLT, 2019 WL

23  528441, at *3-4 (E.D. Cal. Feb. 11, 2019).

24         In determining whether to exercise discretion to entertain a claim for a

25  declaratory judgment, courts in the Ninth Circuit assess several considerations,

26  which include:

27              whether the declaratory action will settle all aspects of the controversy;
               whether the declaratory action will serve a useful purpose in clarifying
28              the legal relations at issue; whether the declaratory action is being

-18-

> sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Principal Life Ins.*, 394 F.3d at 672.  The declaratory judgment claim pled by u-blox is not one as to which the Court should exercise jurisdiction pursuant to these factors.

First, the requested declaratory judgment would not serve a useful purpose when the parties have scarcely begun to negotiate the terms of a new license.  U-blox's Complaint does not establish that the parties have had sufficient opportunity to thoroughly discuss the many aspects of a license agreement that need to be negotiated.  Patent licenses include a complex set of interrelated terms beyond a royalty rate, including the licensed patent definition, licensed product definition, indemnification, mechanics of royalty reporting and payment, treatment of any "have made" rights, etc.  It is not reasonable for u-blox to expect that the parties would be able to reach agreement on all such terms in a matter of weeks.  The parties' inability to immediately reach an agreement does not justify invoking the judicial process and outsourcing what should be a private negotiation to the federal courts.

Further, as set forth in the Court's decision denying u-blox's request for a TRO, u-blox is not facing any imminent harm from its unlicensed status.  Doc. No. 49.  Where a prospective licensee has ***not*** been sued to enjoin sales of infringing products, there is little utility in a declaratory judgment to determine the terms of a FRAND license.  InterDigital has not sued u-blox seeking an injunction, nor has it even threatened u-blox (or u-blox's customers) with such a lawsuit.  Instead, InterDigital stands ready to continue the good faith efforts to negotiate that it has initiated, and has further offered binding arbitration by neutral third party arbitrators if u-blox truly believes the parties have reached an impasse, such that

-19-

further negotiations would be fruitless.  Doc No. 33-2 ¶¶ 35-36.  U-blox establishes no need for a declaratory judgment when the absence of a license does not create present harm to u-blox.

Second, u-blox filed this action for purposes of "procedural fencing," wherein it sought to use its declaratory judgment claim as a springboard to obtain a TRO preventing InterDigital from collecting royalties from its other licensees, so it could deprive InterDigital of royalties during the pendency of the dispute.  Indeed, u-blox relied on the declaratory judgment claim as the basis of its argument for "likelihood of success."  Doc. No. 42 at 5.  However, the Court correctly found that u-blox failed to demonstrate a likelihood of success on this claim.  Doc. No. 49 at 5 (u-blox made "no effort to demonstrate the likelihood that the Court will adopt u-blox's preferred rate over the rates offered by InterDigital.").  Further, the declaratory judgment claim appears to be primarily asserted as a tool to seek negotiating leverage in the parties' very early stage discussions of a new patent license, which does not warrant exercise of the Court's discretion to hear a declaratory judgment claim.  *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-cv-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014) (dismissing declaratory judgment claim that would merely provide "data point from which the parties could continue negotiations").

Third, the "availability and convenience of other remedies" factor weighs heavily in favor of declining declaratory judgment jurisdiction.  InterDigital has offered the alternative remedy of arbitration to determine FRAND terms for a license.  Doc No. 33-2 ¶¶ 35-36.  Courts have repeatedly recognized the superiority of arbitration as a means of resolving disputes over FRAND license terms, as opposed to declaratory judgment claims in district court.  *InterDigital v. ZTE*, 2014 WL 2206218, at *3 n.3 (dismissing declaratory judgment claim and noting arbitration as potential alternative given that negotiating license agreements "involves mostly business considerations" and litigation is not "a very effective

-20-

means to make an agreement between willing parties"); *see also Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 7989412, at *6 (W.D. Wis. Nov. 8, 2012) (declining to exercise declaratory judgment jurisdiction where binding arbitration "is the obvious solution" and "the best way . . . for the parties to negotiate a rate that takes into account the many elements of a licensing fee that . . . are critical to the determination of a fair, reasonable and non-discriminatory rate.").

Resolving FRAND disputes by first allowing for genuine, good faith bilateral negotiations between the parties, and proceeding to arbitration where a true impasse exists, is far preferable to protracted, expensive litigation that places heavy demands on judicial resources. Arbitration awards also offer the advantage of straightforward cross-border enforcement mechanisms around the world, which are particularly important when a dispute involves a foreign party (like u-blox, a Swiss company). By contrast, court judgments present greater enforcement challenges in foreign jurisdictions. Courts addressing disputes with international aspects are also faced with complicated issues relating to comity, national sovereignty, and extraterritoriality – issues that are obviated by international arbitration. Where a more convenient and practical remedy exists, the Court need not exercise jurisdiction over a declaratory judgment claim that would act as a substitute for negotiation of a business contract between private parties. Instead, the Court should decline to exercise jurisdiction over u-blox's declaratory judgment claim as a discretionary matter, and dismiss this claim pursuant to Rule 12(b)(1).

## IV. CONCLUSION

For the reasons set forth above, the Second and Fourth Causes of Action should be dismissed with prejudice for failure to state a claim, and the Third Cause of Action should be dismissed without prejudice for lack of subject matter jurisdiction.

-21-

Dated: February 25, 2019

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

By: _/s/ David S. Steuer_
       David S. Steuer

David S. Steuer
dsteuer@wsgr.com
Michael B. Levin
mlevin@wsgr.com
Maura L. Rees
mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

Lucy Yen
lyen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800

Natalie J. Morgan
nmorgan@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, California 92130-3002
Telephone:   (858) 350-2300

*Counsel for Defendants*
*InterDigital, Inc., InterDigital*
*Communications, Inc., InterDigital*
*Technology Corporation, InterDigital*
*Patent Holdings Inc., InterDigital Holdings,*
*Inc., and IPR Licensing, Inc.*

-22-