1  DAVID S. STEUER, CA Bar No. 127059
   dsteuer@wsgr.com
2  MICHAEL B. LEVIN, CA Bar No. 172329
   mlevin@wsgr.com
3  MAURA L. REES, CA Bar No. 191698
   mrees@wsgr.com
4  WILSON SONSINI GOODRICH & ROSATI P.C.
   650 Page Mill Road
5  Palo Alto, California 94304-1050
   Telephone:  (650) 493-9300
6
7  LUCY YEN, CA Bar No. 224559
   lyen@wsgr.com
8  WILSON SONSINI GOODRICH & ROSATI P.C.
   1301 Avenue of the Americas, 40th Floor
9  New York, New York 10019-6022
   Telephone:  (212) 999-5800
10 NATALIE J. MORGAN, CA Bar No. 211143
   nmorgan@wsgr.com
11 WILSON SONSINI GOODRICH & ROSATI P.C.
   12235 El Camino Real
12 San Diego, California 92130-3002
   Telephone: (858) 350-2300
13
14 Attorneys for Defendants and Counterclaim Plaintiffs
   *InterDigital, Inc., InterDigital Communications,*
15 *Inc., InterDigital Technology Corporation,*
   *InterDigital Patent Holdings, Inc., InterDigital*
16 *Holdings Inc. and IPR Licensing, Inc.*

17                **UNITED STATES DISTRICT COURT**

18    **SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION**

19

20 U-BLOX AG, U-BLOX SAN DIEGO,        )   No.: 19-cv-00001-CAB-BLM
   INC., AND U-BLOX AMERICA, INC.,    )
21                                     )   **DEFENDANTS' ANSWER**
                    Plaintiffs,        )   **AND COUNTERCLAIMS**
22        v.                           )
                                       )   **JURY TRIAL DEMANDED**
23 INTERDIGITAL, INC.; INTERDIGITAL    )
   COMMUNICATIONS, INC.;              )   **PUBLIC VERSION OF**
24 INTERDIGITAL TECHNOLOGY            )   **DOCUMENT FILED**
   CORPORATION ; INTERDIGITAL         )   **UNDER SEAL**
25 PATENT HOLDINGS, INC. ;            )
   INTERDIGITAL HOLDINGS, INC.; and   )
26 IPR LICENSING, INC.,               )
                                       )
27                                     )
                    Defendants.        )
28 _____)

## ANSWER

Defendants and Counterclaimants InterDigital, Inc.; InterDigital Communications, Inc.; InterDigital Technology Corporation; InterDigital Patent Holdings, Inc.; and IPR Licensing, Inc. (collectively "InterDigital" or "Defendants") hereby answer the Complaint for: (1) Breach of Contract; (2) Promissory Estoppel; (3) Declaratory Judgment; (4) Antitrust Monopolization in Violation of Section 2 of the Sherman Act; (5) Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,432,876; and (6) Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,953,548, filed by u-blox AG; u-blox San Diego, Inc.; and u-blox America, Inc. (collectively "u-blox" or "Plaintiffs") as follows:

## **INTRODUCTION**

1.      Denied.

2.      Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

3.      Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

4.      Admitted that InterDigital entities have been members of 3GPP by virtue of their membership in 3GPP's organizational partner, ETSI, through which InterDigital entities participated in 3GPP working groups.  Admitted that as members of ETSI, InterDigital entities have been subject to the ETSI IPR Policy, which policy speaks for itself.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

# ANSWER

Defendants and Counterclaimants InterDigital, Inc.; InterDigital Communications, Inc.; InterDigital Technology Corporation; InterDigital Patent Holdings, Inc.; and IPR Licensing, Inc. (collectively "InterDigital" or "Defendants") hereby answer the Complaint for: (1) Breach of Contract; (2) Promissory Estoppel; (3) Declaratory Judgment; (4) Antitrust Monopolization in Violation of Section 2 of the Sherman Act; (5) Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,432,876; and (6) Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,953,548, filed by u-blox AG; u-blox San Diego, Inc.; and u-blox America, Inc. (collectively "u-blox" or "Plaintiffs") as follows:

## **INTRODUCTION**

1.     Denied.

2.     Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

3.     Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

4.     Admitted that InterDigital entities have been members of 3GPP by virtue of their membership in 3GPP's organizational partner, ETSI, through which InterDigital entities participated in 3GPP working groups.  Admitted that as members of ETSI, InterDigital entities have been subject to the ETSI IPR Policy, which policy speaks for itself.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

5. Admitted that 2G, 3G, and 4G cellular standards are widely implemented in wireless electronic devices. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

6. InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

7. InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Admitted that u-blox freely and voluntarily entered into a Patent License Agreement and two amendments to that agreement. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

18. Admitted that u-blox's patent license with InterDigital expired on December 31, 2018. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

19. Denied.

20. Denied.

## THE PARTIES[1]

---

[1] Headings are reproduced for organizational structure only and are not adopted by Defendants.

**A.** **u-blox**

21.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

22.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

23.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

24.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

25.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

26.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

27.     InterDigital lacks information sufficient to form a belief as to the truth of the allegations of this paragraph, and on that basis denies those allegations.

28.     Admitted that u-blox sells products that support cellular technologies including 2G, 3G, and 4G cellular standards, including sales within the United States.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

**B.** **InterDigital**

29.     Admitted.

30.     Admitted that InterDigital Communications, Inc. is a Delaware corporation.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

31.     Admitted that InterDigital Technology Corporation is a Delaware corporation.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

32.     Admitted.

33.     Admitted.

34.     Admitted that IPR Licensing, Inc. is a Delaware corporation.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

35.     Admitted that the referenced entities are wholly-owned, direct or indirect subsidiaries of InterDigital, Inc.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

36.     Admitted that the referenced entities are wholly-owned, direct or indirect subsidiaries of InterDigital, Inc.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

37.     Admitted that InterDigital has an office at 9276 Scranton Road #300, San Diego, CA 92121.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

38.     Admitted that InterDigital's revenue is primarily derived from patent licensing.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

39.     Admitted that InterDigital owns thousands of U.S. and non-U.S. patents.  Admitted that InterDigital owns patents that "relate predominantly to digital wireless radiotelephony technology (including, without limitation, 3G, 4G and 5G technologies)."  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

**JURISDICTION AND VENUE**

40.     Admitted that u-blox's Complaint purports to assert claims under the patent laws of the United States, Section 2 of the Sherman Act, and the Declaratory

-4-

1  Judgment Act.  Admitted that, to the extent that claims are not arbitrable and that
2  subject matter jurisdiction under Article III can be established, federal question
3  jurisdiction exists pursuant to at least 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and
4  1337.  Except as expressly admitted, InterDigital denies the allegations of this
5  paragraph.

6      41.   Denied.

7      42.   Admitted that personal jurisdiction over InterDigital may be exercised
8  in this district in this case.  Except as expressly admitted, InterDigital denies the
9  allegations of this paragraph.

10     43.   Admitted that to the extent claims are not arbitrable, venue is proper
11 in this district pursuant to 28 U.S.C. § 1391(c).  Except as expressly admitted,
12 InterDigital denies the allegations of this paragraph.

13 **FACTUAL ALLEGATIONS**

14     44.   Denied.

15 **Standard Setting Organizations and Intellectual Property Rules**

16     45.   Admitted that SSOs can be generally characterized as voluntary
17 membership organizations whose participants engage in the development of
18 industry standards.  Except as expressly admitted, InterDigital denies the
19 allegations of this paragraph.

20     46.   Admitted that SSOs and the standards they promulgate generally
21 allow companies to agree on common technology standards so that compliant
22 products implementing the standards will work together.  Admitted that SSOs
23 generally have pro-competitive benefits such as lowering costs by increasing
24 product manufacturing volume and inter-brand competition and by lowering
25 switching costs for consumers.  Except as expressly admitted, InterDigital denies
26 the allegations of this paragraph.

27     47.   Admitted.

28

48.     Admitted that some SSOs have adopted IPR policies.  Admitted that SSO participation may lead to benefits including recognition of leadership in the technology, increased demand for participants' products, advantage flowing from familiarity with the contributed technology potentially leading to shorter development lead times, and improved product compatibility.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

49.     Admitted that consumers and businesses may benefit from continued innovation, reduced costs, and other efficiencies from widespread interoperability and economies of scale and scope enabled by standardization.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Admitted that SSOs have adopted IPR policies, such as the ETSI IPR policy which expressly sets forth its purpose in the text of the policy, which IPR policies speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

## ETSI's IPR Policy

55.     Admitted that ETSI is an independent, non-profit SSO.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

56.     Admitted.

57.     Admitted that ETSI has been involved in standardizing 2G mobile cellular technologies.  Admitted that 3GPP has been involved in standardizing 3G and 4G mobile cellular technologies in cooperation with its organizational partners, such as ETSI.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

58.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

59.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

60.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

61.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

62.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

63.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph, including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

64.     Admitted that ETSI has an IPR Policy, which policy speaks for itself. Except as expressly admitted, InterDigital denies the allegations of this paragraph,

-7-

including all characterizations of documents beyond the text of the document and distortions via selective excerpts.

## InterDigital's IPR Declarations

65.     Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph (including the allegations of footnote 2).

66.     Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

67.     Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

68.     Denied.

69.     Denied.

## Overview of Cellular Standards

70.     Denied.

## The 2G Standard

71.     Admitted that mobile phone use began in approximately the late 1970s with relatively basic analog systems.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

72.     Admitted that the cellular industry moved toward a second generation of mobile telephony based on digital technology that offered benefits over prior technology.  InterDigital lacks information sufficient to form a belief as to the truth

of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

73.     Admitted that texting and basic data services became available with 2G standards and standards commonly considered to be 2G included GSM, GPRS & EDGE, and CDMA & IS-95.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

74.     Admitted that GSM (Grope Spécial Mobile) became a widespread 2G standard.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

75.     Admitted that GSM incorporated technical advances over other cellular systems and included use of TDMA.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

76.     Admitted that follow-on standards to GSM included GPRS and EDGE.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

77.     Admitted that 2G standards such as GSM are still in use today. Admitted that later generation standards have become widespread.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

78.     Admitted that CDMA/IS-95 standard is based on Code Division Multiple Access.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

79.     Admitted that CDMA technology may make use of spreading codes to allow multiple users to communicate at the same time.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

80.     Admitted that certain CDMA technology was standardized as IS-95 and was widely deployed in the 1990s.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

### The 3G Standard

81.     Admitted that the cellular industry worked to develop more advanced standards in the 1990s.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

82.     Admitted that two next-generation standards developed in the 1990s were WCDMA/UMTS and CDMA-2000.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

83.     Admitted that 3GPP released successive versions of UMTS standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

84.     Admitted.

### The 4G Standard

85.     Admitted that the LTE 4G standard was developed by 3GPP and continues to evolve, including LTE-Advanced.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

-10-

86.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

87.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

88.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

89.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

90.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

91.     Admitted that 3GPP released successive versions of LTE standard specifications, which specifications speak for themselves.  InterDigital lacks information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph, and on that basis denies those allegations.

**Hold-up and Royalty Stacking**

92.     Denied.

93.     Denied.

-11-

94. Denied.

95. Admitted that courts have issued decisions in cases captioned *TCL Commun. Tech. Holdings, LTD v. Telefonaktiebolaget LM Ericsson*, *In re Innovatio IP Ventures, LLC Patent Litig.*, and *Microsoft Corp. v. Motorola, Inc.*, which decisions speak for themselves. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

96. Admitted that courts, regulators, and economists have commented on their views regarding FRAND commitments, which comments speak for themselves. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

97. Denied.

**InterDigital's Refusal to Offer u-blox A New License on FRAND Terms**

98. Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, which documents speak for themselves. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

99. Denied.

100. Denied.

101. Admitted that Concur IP has prepared various purported surveys, which surveys speak for themselves. Except as expressly admitted, InterDigital denies the allegations of this paragraph (including the allegations of footnote 3).

102. Denied.

103. Admitted that Concur IP has prepared various purported surveys, which surveys speak for themselves. Except as expressly admitted, InterDigital denies the allegations of this paragraph.

104. Denied.

105. Denied.

1  106.  Denied.

2  **In A Blatant Attempt to Coerce u-blox To Enter Into a New License**
3  **Agreement That Is Not on FRAND Terms, InterDigital Refuses to Refrain**
   **From Interfering With u-blox's Customer Relationships (Again)**
4

5  107.  Admitted that the Patent License Agreement ("PLA") between u-blox
6  and InterDigital ███████████████████████████. Except as expressly
7  admitted, InterDigital denies the allegations of this paragraph.

8  108.  Admitted that the PLA ███████████████████████████.
9  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

10  109.  Admitted that after the ████████████████████████
11  █████████████████████████████████████████████
12  █████████████████████████████████████████████
13  ████. Except as expressly admitted, InterDigital denies the allegations of this
14  paragraph.

15  110.  ████████████████████████████████████
16  ████████. Except as expressly admitted, InterDigital denies the allegations
17  of this paragraph.

18  111.  ████████████████████████████████████
19  █████████████████████████████████████
20  █████████. Except as expressly admitted, InterDigital denies the allegations
21  of this paragraph.

22  112.  ████████████████████████████████████
23  █████████████. Except as expressly admitted, InterDigital denies the
24  allegations of this paragraph.

25  113.  Denied.

26  114.  Denied.

27  115.  Denied.

28

-13-

1    116.   Denied.

2    117.   Denied.

3    118.   Denied.

4        **InterDigital Is Attempting to Force u-blox To Agree To**
5        **A License That is Not On FRAND Terms**

6    119.   Admitted that the ███████████████████████████████

7    ███████. Except as expressly admitted, InterDigital denies the allegations of this

8    paragraph.

9    120.   Admitted that ███████████████████████████████

10   ███████████████████████████████████████████████

11   ███████████████████████ which communication speaks for itself.

12   Except as expressly admitted, InterDigital denies the allegations of this paragraph.

13   121.   Admitted that ███████████████████████████████

14   ████, which communication speaks for itself.  Except as expressly admitted,

15   InterDigital denies the allegations of this paragraph.

16   122.   Admitted that ███████████████████████████████

17   ████, which communication speaks for itself.  Except as expressly admitted,

18   InterDigital denies the allegations of this paragraph.

19   123.   Admitted that ███████████████████████████████

20   ████, which communication speaks for itself.  Except as expressly admitted,

21   InterDigital denies the allegations of this paragraph.

22   124.   Admitted that ███████████████████████████████

23   ████, which communication speaks for itself.  Except as expressly admitted,

24   InterDigital denies the allegations of this paragraph.

25   125.   Admitted that █████████████████████████

26   ███████████████████████████████████████

27

28

-14-

speaks for itself.  Except as expressly admitted, InterDigital denies the allegations

of this paragraph.

126.   Admitted that ███████████████████████████████████

███, which communication speaks for itself.  Except as expressly admitted,

InterDigital denies the allegations of this paragraph.

127.   Admitted that ███████████████████████████████████

███, which communication speaks for itself.  Except as expressly admitted,

InterDigital denies the allegations of this paragraph.

128.   InterDigital lacks information sufficient to form a belief as to the truth

of the allegations of this paragraph, and on that basis denies those allegations.

129.   Denied.

130.   Denied.

### The Irreparable Harm to u-blox

131.   InterDigital lacks information sufficient to form a belief as to the truth

of the remainder of the allegations of this paragraph, and on that basis denies those

allegations.

132.   Denied.

133.   Denied.

134.   Admitted that u-blox purports to seek relief via its complaint.  Except

as expressly admitted, InterDigital denies the allegations of this paragraph.

### CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### (Breach Of Contract)

135.   InterDigital incorporates its responses to the foregoing paragraphs.

136.   Admitted that InterDigital entities have submitted Information

Disclosure and Licensing Declaration statements to ETSI, and that ETSI has an

-15-

1  IPR policy, which documents speak for themselves.  Except as expressly admitted,

2  InterDigital denies the allegations of this paragraph.

3      137.   Admitted that InterDigital entities have submitted Information

4  Disclosure and Licensing Declaration statements to ETSI, and that ETSI has an

5  IPR policy, which documents speak for themselves.  Except as expressly admitted,

6  InterDigital denies the allegations of this paragraph.

7      138.   Denied.

8      139.   Denied.

9      140.   Denied.

10      141.   Denied.

11  ## SECOND CAUSE OF ACTION
## (Promissory Estoppel)
12

13      142.   InterDigital incorporates its responses to the foregoing paragraphs.

14      143.   This cause of action was dismissed with prejudice pursuant to the

15  Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50),

16  and accordingly, no response is required.

17      144.   This cause of action was dismissed with prejudice pursuant to the

18  Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50),

19  and accordingly, no response is required.

20      145.   This cause of action was dismissed with prejudice pursuant to the

21  Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50),

22  and accordingly, no response is required.

23      146.   This cause of action was dismissed with prejudice pursuant to the

24  Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50),

25  and accordingly, no response is required.

26

27

28

147.   This cause of action was dismissed with prejudice pursuant to the Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50), and accordingly, no response is required.

148.   This cause of action was dismissed with prejudice pursuant to the Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50), and accordingly, no response is required.

149.   This cause of action was dismissed with prejudice pursuant to the Court's Order Regarding Motion to Dismiss dated April 11, 2019 (Doc. No. 50), and accordingly, no response is required.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment)

150.   InterDigital incorporates its responses to the foregoing paragraphs.

151.   Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, and that ETSI has an IPR policy, which documents speak for themselves.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

152.   Denied.

153.   Denied.

## FOURTH CAUSE OF ACTION
### (Antitrust Monopolization In Violation Of Section 2 Of The Sherman Act)

154.   InterDigital incorporates its responses to the foregoing paragraphs.

155.   Admitted that u-blox purports to assert a claim for antitrust monopolization.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

156.   Admitted that InterDigital entities have submitted Information Disclosure and Licensing Declaration statements to ETSI, and that ETSI has an IPR policy, which documents speak for themselves.  Admitted that 3GPP has

-17-

1   promulgated standard specifications for 3G and 4G cellular standards, which

2   specifications speak for themselves.  Except as expressly admitted, InterDigital

3   denies the allegations of this paragraph.

4         157.   Denied.

5         158.   Denied.

6         159.   Denied.

7         160.   Denied.

8         161.   Denied.

9         162.   Denied.

10                    **Relevant Technology Markets**

11        163.   Denied.

12        164.   Denied.

13        165.   Denied.

14        166.   Denied.

15        167.   Denied.

16                  **InterDigital's Antitrust Violations**

17        168.   Admitted that courts, regulators, and economists have made

18  comments expressing views regarding FRAND commitments, which comments

19  speak for themselves.  Except as expressly admitted, InterDigital denies the

20  allegations of this paragraph.

21        169.   Denied.

22        170.   Denied.

23        171.   Denied.

24        172.   Denied.

25        173.   Denied.

26        174.   Denied.

27        175.   Denied.

28

-18-

1    176.   Denied.

2    177.   Admitted that u-blox purports to assert an antitrust claim.  Except as

3    expressly admitted, InterDigital denies the allegations of this paragraph.

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,432,876)**

6    178.   InterDigital incorporates its responses to the foregoing paragraphs.

7    179.   Admitted that Exhibit 34 purports to be a copy of U.S. Patent No.

8    8,432,876 (the "'876 patent"), which exhibit speaks for itself.  Admitted that an

9    InterDigital entity is reflected as the assignee of the '876 patent.  Except as

10    expressly admitted, InterDigital denies the allegations of this paragraph.

11    180.   Admitted that u-blox has raised a dispute concerning infringement of

12    the '876 patent and that ███████████████████████████████

13    ████████, which document speaks for itself.  Except as expressly admitted,

14    InterDigital denies the allegations of this paragraph.

15    181.   Denied.

16    182.   Denied.

17    183.   Admitted.

18    184.   Admitted that u-blox purports to seek a declaratory judgment

19    concerning non-infringement of the '876 patent.  Except as expressly admitted,

20    InterDigital denies the allegations of this paragraph.

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,953,548)**

23    185.   InterDigital incorporates its responses to the foregoing paragraphs.

24    186.   Admitted that Exhibit 35 purports to be a copy of U.S. Patent No.

25    8,953,548 (the "'548 patent"), which exhibit speaks for itself.  Admitted that an

26    InterDigital entity is reflected as the assignee of the '548 patent.  Except as

27    expressly admitted, InterDigital denies the allegations of this paragraph.

28

-19-

187.   Admitted that u-blox has raised a dispute concerning the '548 patent and that ███████████████████████████████████████████████, which document speaks for itself.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

188.   Denied.

189.   Denied.

190.   Admitted.

191.   Admitted that u-blox purports to seek a declaratory judgment concerning non-infringement of the '548 patent.  Except as expressly admitted, InterDigital denies the allegations of this paragraph.

**PRAYER FOR RELIEF**

A.   Denied

B.   Denied

C.   Denied

D.   Denied

E.   Denied

F.   Denied

G.   Denied

H.   Denied

I.   Denied

J.   Denied

K.   Denied

L.   Denied

M.   Denied

N.   Denied

O.   Denied

P.   Denied

-20-

## ADDITIONAL DEFENSES

InterDigital hereby asserts the following defenses based on its investigation to date; however, it does not concede that it bears a burden of proof on them and reserves the right to assert additional defenses as warranted:

### FIRST DEFENSE

Plaintiffs are not entitled to relief under the doctrine of unclean hands.

### SECOND DEFENSE

Plaintiffs are not entitled to relief under the doctrine of waiver.

### THIRD DEFENSE

Plaintiffs are not entitled to relief under the doctrine of estoppel.

### FOURTH DEFENSE

Plaintiffs are not entitled to relief under the doctrine of unjust enrichment.

### FIFTH DEFENSE

Plaintiffs are not entitled to relief due to lack of standing, unripeness, and lack of declaratory judgment jurisdiction.

### SIXTH DEFENSE

Plaintiffs are not entitled to relief under the *Noerr-Pennington* doctrine.

### SEVENTH DEFENSE

Plaintiffs are not entitled to relief due to breach of obligations to the ETSI standards-setting organization.

### EIGHTH DEFENSE

Plaintiffs are not entitled to relief under the doctrine of laches and/or applicable statutes of limitations.

### NINTH DEFENSE

Plaintiffs are not entitled to relief due to failure to mitigate damages.

### TENTH DEFENSE

-21-

1    Plaintiffs are not entitled to relief due to set-off.

2    **ELEVENTH DEFENSE**

3    Plaintiffs are not entitled to relief due to voluntary payment and/or

4    acquiescence.

5    **TWELFTH DEFENSE**

6    Plaintiffs are not entitled to relief due to lack of jurisdiction for any

7    arbitrable claims.

8    **JURY DEMAND**

9    InterDigital demands a jury trial on all claims so triable

10   **NOTICE PURSUANT TO FED. R. CIV. P. 44.1**

11   Defendants provide notice that the claims and counterclaims in this case

12   raise an issue of foreign law under the laws of France.

13   **COUNTERCLAIMS**

14   Counterclaimants InterDigital, Inc.; InterDigital Communications, Inc.;

15   InterDigital Technology Corporation; InterDigital Patent Holdings, Inc.; and IPR

16   Licensing, Inc. (collectively "InterDigital" or "Counterclaimants") through their

17   undersigned counsel, allege for their Counterclaim against u-blox AG; u-blox San

18   Diego, Inc.; and u-blox America, Inc. (collectively "u-blox" or

19   "Counterdefendants") as follows:

20   **THE PARTIES**

21   1.    Counterclaimant InterDigital, Inc. is organized under the laws of

22   Pennsylvania.  Its principal place of business is at 200 Bellevue Parkway, Suite

23   300, Wilmington, DE 19809.

24   2.    Counterclaimant InterDigital Communications, Inc. is a Delaware

25   corporation.  Its principal place of business is at 1001 E. Hector Street, Suite 300,

26   Conshohocken, Pennsylvania 19428.

27

28

-22-

3.      Counterclaimant InterDigital Technology Corporation is a Delaware corporation.  Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

4.      Counterclaimant InterDigital Patent Holdings, Inc. is a Delaware corporation.  Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

5.      Counterclaimant IPR Licensing, Inc. is a Delaware corporation.  Its principal place of business is at 200 Bellevue Parkway, Suite 300, Wilmington, DE 19809.

6.      On information and belief, Counterdefendant u-blox AG is a corporation organized and existing under the laws of Switzerland, having its principal place of business in Zürcherstrasse 68, 8800 Thalwil, Switzerland.

7.      On information and belief, Counterdefendant u-blox San Diego, Inc. is a wholly-owned subsidiary of u-blox AG and is a corporation organized and existing under the laws of Delaware, having its principal place of business at 12626 High Bluff Drive #200, San Diego, California 92130.

8.      On information and belief, Counterdefendant u-blox America, Inc. is a wholly-owned subsidiary of u-blox AG and is a corporation organized and existing under the laws of Delaware, having its principal place of business at 1902 Campus Commons Drive Suite 310, Reston, Virginia 20191.

9.      Counterdefendants are engaged in the cellular device business, including the sale of devices that utilize cellular wireless technology in the United States and globally.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

11.     Counterdefendants are subject to this Court's personal jurisdiction because they have availed themselves of the jurisdiction of this Court by filing the Complaint in this action; they regularly solicit and conduct business in this District; and they have at least minimum contacts with this District, including an office of u-blox San Diego Inc. in this District.

12.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and (d) and because this Court has personal jurisdiction over the Counterdefendants because they have availed themselves of the jurisdiction of this Court by filing the Complaint in this action, they regularly solicit and conduct business in this District, and they have at least minimum contacts with this District, including an office of u-blox San Diego Inc. in this District.

## STANDARD-SETTING AND FRAND COMMITMENTS

13.     Standard-setting organizations (SSOs) create technical standards for products that need to interoperate.  For example, in order for cellular phone handsets and base station equipment to be able to communicate with each other to complete calls, they must adhere to common technical standards.  Patents that are necessarily infringed by the practice of a standard are often referred to as "standards-essential patents," or SEPs, although each SSO will ordinarily have its own definition of "essential" with respect to standards promulgated by that organization.  SSOs often ask members who own SEPs to undertake to be prepared to grant licenses under SEPs for standards-compliant products on fair, reasonable, and non-discriminatory (FRAND) terms and conditions.

14.     Some SSOs may also require members to make disclosures of specific intellectual property rights (IPRs) that may be essential (*i.e.*, IPRs that could potentially qualify as SEPs).  The FRAND commitment applicable to SEPs serves to provide a balance between the need to use technology for standardization (which provides benefits of interoperability and efficiency), and the rights of IPR owners

-24-

(who have made substantial investments in the research and development required to develop the patented technology). Manufacturers gain the ability to make interoperable products with the potential for widespread adoption among consumers, while IPR owners obtain fair and reasonable compensation for the use of their inventions.

15. The 2G, 3G, and 4G cellular standards at issue in this case were developed by ETSI and by the 3GPP consortium, in which companies participate through other SSOs referred to as organizational partners. InterDigital participated in 3GPP through its membership in ETSI. Accordingly, the ETSI IPR Policy governs the FRAND commitments applicable to the cellular standards relevant to this case.

16. The ETSI IPR Policy governs the conduct of ETSI members with respect to disclosure and licensing commitments concerning IPRs such as patents in the context of ETSI participation and membership. The Policy is governed by the law of France. *See* ETSI IPR Policy § 12.

17. On information and belief, Counterdefendant u-blox AG is a member of ETSI.

18. The ETSI IPR Policy expressly sets forth the Policy's goals. Section 3.1 of the ETSI IPR Policy states that its objective is to adopt "solutions which best meet the technical objectives" of the telecommunications sector, and that "[i]n achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs." ETSI IPR policy § 3.1. It further expressly provides that "IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS." ESTI IPR Policy § 3.2. Accordingly, the ETSI IPR Policy is not solely concerned with

-25-

making IPRs available to manufacturers to ensure widespread dissemination of standards.  Rather, the Policy actually provides that the interests of patent owners are equally to be protected.

19.     In order to "reduce the risk" that patents are unavailable to those using the standard, but at the same time provide a mechanism for patent owners to be fairly and adequately compensated for the use of their IPR, ETSI IPR Policy § 3, ETSI may ask the owner of "Essential IPR" to provide an "undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ('FRAND') terms and conditions under such IPR . . . ."  ETSI IPR Policy § 6.1.

20.     The ETSI IPR Policy also includes a form that IPR owners shall use in making the FRAND undertaking, called the ETSI "IPR Information Statement and Licensing Declaration."  This undertaking sets forth the content of the actual FRAND undertaking made by the IPR owner.  ETSI IPR Policy, Appx. A.  This form demonstrates the difference in scope between the IPRs that are to be disclosed (those for which the owner has a "present belief" that they "may be or may become ESSENTIAL") and the IPRs as to which the owner declares it is prepared to grant licenses on FRAND terms and conditions ("[t]o the extent that the IPR(s) disclosed . . . are or become, and remain ESSENTIAL").   ETSI IPR Policy, Appx. A.  The form also provides that "the construction, validity, and performance of this IPR information statement and licensing declaration shall be governed by the laws of France."

21.     InterDigital's FRAND undertaking pursuant to the Information Disclosure and Licensing Statement was expressly made only "to the extent" that the disclosed IPRs "are, or become and remain, essential," as stated in the ETSI IPR Policy.

-26-

22.     The ETSI Guide on IPRs, an official explanatory document, further makes clear that the details of licenses are matters for negotiation between individual companies:  "Specific licensing terms and negotiations are commercial issues between the companies and shall not be addressed within ETSI."  ETSI Guide on IPRs § 4.1.  In addition, a series of "Frequently Asked Questions" (FAQ) that was published on the ETSI website emphasized that manufacturers are to obtain FRAND licenses through negotiation with the patent owner, stating that "the concerned firm has to enter into negotiation with the companies holding patents in order to obtain licenses for the use of the patented technology included in, and essential for the implementation of an ETSI STANDARD".

23.     In reliance on the understanding that the ETSI FRAND commitment includes as a fundamental goal that patent owners are to be adequately and fairly rewarded for the use of their inventions, InterDigital invested heavily in research and development toward technology relating to cellular standards.  In total, InterDigital has invested over a billion dollars in research and development relating to core wireless technology.  InterDigital has also participated in standards-setting activities with 3GPP and ETSI for cellular wireless standards.

24.     In reliance on the ETSI IPR Policy, InterDigital also submitted Information Disclosure and Licensing Declaration statements to ETSI, in which it identified IPRs that may be, or may become, essential to ETSI standards. InterDigital's undertakings submitted to ETSI were made in good faith with no intention whatsoever not to fulfill them, and InterDigital has in fact fulfilled them, as found by the Administrative Law Judges (ALJs) in multiple ITC investigations.

## INTERDIGITAL'S GOOD FAITH EFFORTS TO NEGOTIATE WITH U-BLOX AND INTERDIGITAL'S OFFER TO ARBITRATE THE PARTIES' DISPUTE

25.     As contemplated by the ETSI IPR Policy, InterDigital has sought to negotiate a license on FRAND terms and conditions with Counterdefendants. Moreover, should good faith negotiations ultimately fail to bear fruit, InterDigital has also offered to resolve the parties' disputes via arbitration by a neutral third party, a fair and efficient procedure that would not consume this court's resources.

26.     Although Counterdefendants agreed to a license with InterDigital in 2012 (the "2012 PLA"), they have refused to renew that license following the expiration of the Second Amendment on December 31, 2018.

27.     ████████████████████████████████████████ ████████████████████████████. In the 2012 PLA, u-blox freely and voluntarily agreed to pay the "non-refundable" royalties set forth therein in return for the license rights granted in the PLA. *See* 2012 PLA § 3.

28.     U-blox further agreed in the PLA that ████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████████ *Id*.

29.     Instead of negotiating in good faith to renew the license following expiration, Counterdefendants seek to excuse their refusal to license by meritlessly asserting that InterDigital made misrepresentations to SSOs about InterDigital's intent to abide by FRAND commitments for standards-essential patents.

-28-

30.     U-blox's conduct in negotiating with InterDigital has been characterized by delay and avoidance, rather than diligence and good faith.  For example, ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████

31.     During phone calls between InterDigital and u-blox ██████████ ████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████

32.     ████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ██

33.     During negotiations, ██████████████████████████ ████████████████████████████████████████████

1

2

3

4

5

6

7    34.

8

9

10

11

12

13

14

15

16    35.

17

18

19

20

21

22

23    36.

24

25

26

27

28

-30-

1   37.   ████████████████████████████████

2   ███████████████████████████████

3   ████████████████████████████

4   █████████████████████████████████

5   ██████████████████████████████████

6   ██████████████████████████████████

7   ████████████████████████████████

8   ███████████████████

9   38.   ███████████████████

10  ███████████████████████████████████

11  ████████████████████████████████

12  ██████████████████████████

13  ████████████████████████████████

14  ██████████████████████████████████

15  █████████████████████████

16  ██████████████████████████████

17  ███████████████████████████████

18  ███████████████████████████████

19  ████████████████

20  39.   ██████████████████████████

21  ████████████████████████████████

22  ███████████████

23  40.   ████████████████████████████

24  ██████████████████████████

25  ██████████████████████████████████

26  █████████████████████████████

27  ████████████████████████████

28

ANSWER AND COUNTERCLAIMS                                  CASE NO.: 19-cv-00001-CAB-BLM

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ████████████████████████████████████████████

6   41.   ████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ██████████████████████████████████████████

9 ███████████████████████████████████████

10   42.   However, rather than continuing the negotiation, just after midnight

11  Pacific time on January 1, 2019, within minutes after the license expired, u-blox

12  filed the present lawsuit, including a treble-damages antitrust claim, along with an

13  *ex parte* application for a temporary restraining order.

14   43.   InterDigital is willing to continue negotiating in good faith with u-

15  blox to enter a license agreement on FRAND terms and conditions, or, if u-blox

16  prefers, to enter arbitration to request a neutral arbitration panel to set FRAND

17  terms and conditions for a license between the parties.

18   44.   International arbitration would provide a more expedient and efficient

19  means of resolving the issues raised by u-blox in its Complaint, for a number of

20  reasons.

21   45.   Arbitration is a more streamlined and less expensive procedure than

22  federal court litigation.

23   46.   Arbitration does not require the expenditure of public resources, as the

24  parties would undertake the arbitration at their own expense.

25   47.   International arbitration also offers the benefit of straightforward

26  cross-border enforcement mechanisms in many countries around the world.

27

28

ANSWER AND COUNTERCLAIMS                                    CASE NO.: 19-cv-00001-CAB-BLM

48.     In this dispute between u-blox (based in Switzerland) and InterDigital (based in America), international arbitration thus would have the benefit of providing for an award that would be binding on u-blox and could be enforced in an expedient manner.

49.     International arbitration obviates complicated legal issues like extraterritoriality, comity, and national sovereignty that may arise in a dispute involving companies based in different countries.

50.     On January 14, 2019, InterDigital sent a letter to u-blox with its arbitration proposal.  InterDigital proposed that the parties ███████████ ██████████████████████████████████████████████████.  Although more than three months have passed, U-blox has still not responded to this proposal.

## COUNTERCLAIM I

### (Declaratory Judgment that InterDigital Did Not Breach, Satisfied, and Discharged FRAND Commitments)

51.     InterDigital restates and realleges the preceding allegations of its Counterclaims.

52.     InterDigital is a member of ETSI and has submitted IPR Information Statements and Licensing Disclosures to ETSI pursuant to ETSI's IPR Policy.

53.     In its Complaint, u-blox alleges that InterDigital breached contractual commitments reflected in the IPR Information Statements and Licensing Disclosures to be prepared to grant licenses on FRAND terms and conditions for standards-essential patents.

54.     InterDigital denies any such breach and accordingly an actual controversy has arisen and now exists between InterDigital and u-blox.

55.     InterDigital has fully complied with its FRAND obligations by, among other things, negotiating in good faith with u-blox for a renewal of the 2012

-33-

1   PLA and offering to arbitrate the terms of a license on FRAND terms and

2   conditions, ███████████████████████████████████████████████████

3   ███████████████████

4        56.     However, u-blox has acted as an unwilling licensee, engaging in

5   unreasonable hold-out behavior and failing to negotiate in good faith, and therefore

6   is not entitled to the benefit of InterDigital's FRAND commitment.

7        57.     Therefore, InterDigital requests a declaratory judgment that it did not

8   breach FRAND commitments and that its FRAND commitments have been

9   satisfied and discharged with respect to u-blox, because, among other reasons,

10  InterDigital has negotiated in good faith, including via its licensing offers and its

11  arbitration offer to u-blox, and u-blox has engaged in unreasonable and bad faith

12  negotiation tactics that make it an unwilling licensee that is not entitled to the

13  benefit of InterDigital's FRAND commitment.

## COUNTERCLAIM II

### (Breach of Obligation to Negotiate in Good Faith)

16       58.     InterDigital restates and realleges the preceding allegations of its

17  Counterclaims.

18       59.     U-blox is a member of ETSI and thus is bound by ETSI's rules.

19       60.     In its complaint, u-blox claims entitlement to a license on FRAND

20  terms and conditions under InterDigital's 2G, 3G, and 4G standards-essential

21  patents pursuant to the ETSI IPR Policy.

22       61.     Under French law governing the ETSI IPR Policy and the IPR

23  Information Statements and Licensing Disclosures, a license-seeking party has an

24  obligation to negotiate in good faith toward a license on FRAND terms and

25  conditions.

26       62.     U-blox failed to negotiate in good faith with InterDigital. U-blox's

27  refusal to negotiate in good faith deprived InterDigital of royalties and resulted in

28

-34-

substantial commercial benefit to u-blox, including the sale of products that use InterDigital's valuable technology without paying a royalty for such use.

63.     As a result of u-blox's breach of its duty to negotiate in good faith, InterDigital has been injured.  U-blox's refusal to negotiate in good faith has wasted the time of InterDigital employees who invested time and resources in attempting to negotiate with u-blox, ███████████████████████████████ ███████████████████████████

## COUNTERCLAIM III

## (Infringement of U.S. Patent No. 8,432,876 Asserted by IPR Licensing, Inc.)

64.     InterDigital restates and realleges the preceding allegations of its Counterclaims.

65.     On April 30, 2013, United States Patent No. 8,432,876 ("the '876 Patent") was duly and legally issued for inventions titled "Techniques for setting up traffic channels in a communications system."  At all relevant times, IPR Licensing, Inc. ("IPRL") has been the owner of all right, title, and interest in and to the '876 Patent and holds the right to sue and recover damages for infringement thereof.  The '876 Patent is valid and enforceable.  A true and correct copy of the '876 Patent is attached hereto as Exhibit A.

66.     On information and belief, u-blox has directly infringed and continues to directly infringe numerous claims of the '876 Patent, including at least claims 1 and 7, by manufacturing, using, selling, offering to sell, and/or importing the accused 4G devices that support LTE Release 8 and later releases, including, but not limited to, LARA-R3121 and R2 modules, TOBY-R2, L2 and L4 series, SARA-N3, N2 and R4/N4 series, and MPCI-L2 series.[2]  U-blox is liable for infringement of the '876 Patent pursuant to 35 U.S.C. §271(a).

---

[2] https://www.u-blox.com/sites/default/files/ProductCatalog_V22_2019Feb.pdf.

67.     For example, the accused 4G devices comply with the 4G standards, including, for example:  the multiplexing and channel coding specifications described in 3GPP TS 36.212 at sections 5.3.3, 5.3.3.1.1, and 5.3.3.1.5; the physical channels and modulation specifications described in 3GPP TS 36.211 at sections 6.2.2, 6.7, 6.8.2, and 7.2; the physical layer procedures specified in 3GPP TS 36.213 at sections 9.1.1, 7.1, and 7.1.6; and the E-UTRAN radio interface protocol architecture specified in 3GPP TS 36.300 at sections 11.1, 11.1.1-11.1.2, 5, and 5.1.3.

68.     In supporting LTE Release 8 and later releases, the accused 4G devices include circuitry to monitor control information in each of a plurality of first time intervals required by the claims, where a second time interval is divided into the first time intervals.  The control information monitored includes forward traffic channel allocation information and reverse traffic channel allocation information.  The control information is received in less than or equal to a slot and the second time interval is a plurality of slots.  The accused 4G devices further include circuitry to receive forward traffic data in one of the plurality of first time intervals in accordance with the control information, circuitry to receive forward traffic data in all of the plurality of first time intervals in accordance with receiving forward traffic channel allocations, and circuitry to transmit reverse traffic data in one of the plurality of first time intervals in accordance with the control information.

69.     U-blox has been and is now indirectly infringing at least one claim of the '876 Patent in accordance with 35 U.S.C. §271(b) in this district and elsewhere in the United States.  More specifically, u-blox has been and is now actively inducing direct infringement by other persons, such as u-blox's unlicensed customers who use, sell or offer for sale products that embody and/or otherwise practice one or more claims of the '876 Patent.

-36-

70.     By no later than June 2018, and certainly by the filing of the Complaint in this action, u-blox had knowledge of the '876 Patent and that its actions directly infringed and/or resulted in direct infringement of the '876 Patent, and knew or were willfully blind that its actions would induce direct infringement by others and intended that its actions induced direct infringement by others.

71.     U-blox actively induces such infringement by, among other things, providing product manuals and other instruction materials for its device that induce its unlicensed customers to use u-blox's devices in their normal and customary way to infringe the '876 Patent.  For example, u-blox's website touts that several of its devices support 4G LTE Release 8 and later releases, including, but not limited to, LARA-R3121 and R2 modules, TOBY-R2, L2 and L4 series, SARA-N3, N2 and R4/N4 series, and MPCI-L2 series.[3]  Through its manufacture and sale of these and other 4G devices supporting LTE Release 8 and later releases, u-blox specifically intended for its customers to infringe the '876 Patent.  Further, u-blox was aware that these normal and customary activities would infringe the '876 Patent.  U-blox performed the acts that constitute induced infringement, and that would induce actual infringement with knowledge of the '876 Patent and with the knowledge or willful blindness that the induced acts would constitute direct infringement.

72.     Accordingly, on information and belief, u-blox specifically intended for others, such as its unlicensed customers, to directly infringe one or more claims of the '876 Patent in the United States because u-blox had knowledge of the '876 Patent and actively induced others (*e.g.*, its customers) to directly infringe the '876 Patent by using, selling, or offering to sell u-blox's 4G LTE devices.

73.     U-blox has been and is now indirectly infringing at least one claim of the '876 Patent in accordance with 35 U.S.C. §271(c) in this district and elsewhere

_____

[3] https://www.u-blox.com/sites/default/files/ProductCatalog_V22_2019Feb.pdf.

in the United States.  U-blox has been and is now providing non-staple articles of commerce to others for use in an infringing system or method with knowledge of the '876 Patent, and with knowledge that the use of its products results in a direct infringement of the '876 Patent by its unlicensed customers, and with knowledge that these non-staple articles of commerce are used as a material part of the claimed invention of the '876 Patent.

74.    U-blox's devices compliant with 4G LTE Release 8 and later releases contain components including an application processor and a baseband processor specifically designed and/or configured to support communication and transmission of data over 4G LTE-compliant networks.  Without these components, u-blox devices compliant with 4G LTE would not function as designed and intended, such as to send and/or receive data over 4G LTE networks. It is reasonable to infer that these components in u-blox devices are especially made or especially adapted to operate in the accused devices to provide wireless communications and the transmission of data in accordance with the 4G LTE standard.  Further, it is reasonable to infer that these components are intended to support the communication of data over a 4G LTE network and are not staple articles or commodities of commerce.  The use of these components is required for operation of the devices to communicate data over a 4G LTE network.

75.    The components of an application processor and baseband processor designed and/or configured to support the communication of data using a 4G LTE network in u-blox devices are each a material part of the invention of the '876 Patent and are especially made for the infringing manufacture, sale, and use of u-blox accused devices.  U-blox's accused devices including these components are especially made or adapted to infringe the '876 Patent, and have no substantial non-infringing uses.

76.     U-blox's infringement of the '876 Patent has damaged IPRL and u-blox is liable to IPRL in an amount to be determined at trial that compensates IPRL for the infringement which, by law, can be no less than a reasonable royalty.

77.     On information and belief, u-blox's infringement of the '876 Patent has been, and continues to be, willful, deliberate, and egregious by continuing its acts of infringement after becoming aware of the '876 Patent and its infringement thereof.  As result, IPRL is entitled to enhanced damages and to an award of attorneys' fees and costs in prosecuting this action.

### COUNTERCLAIM IV

**(Infringement of U.S. Patent No. 8,953,548
Asserted by InterDigital Patent Holdings, Inc.)**

78.     InterDigital restates and realleges the preceding paragraphs of its Counterclaims.

79.     On February 10, 2015, United States Patent No. 8,953,548 ("the '548 Patent") was duly and legally issued for inventions titled "Method and system for supporting multiple hybrid automatic repeat request processes per transmission time interval."  At all relevant times, InterDigital Patent Holdings Inc. ("IDPH") has been the owner of all right, title, and interest in and to the'548 Patent and holds the right to sue and recover damages for infringement thereof.  The '548 Patent is valid and enforceable.  A true and correct copy of the '548 Patent is attached hereto as Exhibit B.

80.     On information and belief, u-blox has directly infringed and continues to directly infringe numerous claims of the '548 Patent, including at least claims 1 and 11, by manufacturing, using, selling, offering to sell, and/or importing the accused 4G devices that support LTE Category 6, including, but not limited to,

-39-

1   TOBY- L4 series.[4]   U-blox is liable for infringement of the '548 Patent pursuant to

2   35 U.S.C. §271(a).

3       81.    For example, the u-blox accused 4G devices comply with the 4G LTE

4   Category 6 standards, including, for example:  the E-UTRAN radio interface

5   protocol architecture specified in 3GPP TS 36.300 at sections 7.5 and 11.2; the

6   medium access control (MAC) protocol specified in 3GPP TS 36.321 at sections

7   5.13 and 6.1.3.8; the radio resource control (RRC) protocol specified in 3GPP TS

8   36.331 at sections 5.3.5.1, 5.3.5.3, 5.3.10.3b and 6.2.2; and the physical layer

9   procedures specified in 3GPP TS 36.213 at section 4.3.

10       82.    In supporting LTE Category 6 carrier aggregation, the accused 4G

11   devices include a processor and memory where the processor is configured to

12   receive a radio resource control (RRC) reconfiguration message where the RRC

13   reconfiguration message configures the devices to support at least one additional

14   component carrier and the RRC reconfiguration message does not activate the

15   additional component carrier.  The processor is also configured to receive a

16   medium access control (MAC) control element (CE) where the MAC CE indicates

17   that the at least one additional component carrier is to be activated, and the MAC

18   CE comprises a bit combination field that is indicative of which component

19   carriers are to be activated.  The processor is further configured to activate the at

20   least one additional component carrier based on receiving the MAC CE.

21       83.    U-blox has been and is now indirectly infringing at least one claim of

22   the '548 Patent in accordance with 35 U.S.C. §271(b) in this district and elsewhere

23   in the United States.  More specifically, u-blox has been and is now actively

24   inducing direct infringement by other persons, such as u-blox's unlicensed

25   customers who use, sell or offer for sale products that embody and/or otherwise

26   practice one or more claims of the '548 Patent.

27

28   [4] https://www.u-blox.com/sites/default/files/ProductCatalog_V22_2019Feb.pdf.

84.    By no later than June 2018, and certainly by the filing of the Complaint in this action, u-blox had knowledge of the '548 Patent and that its actions directly infringed and/or resulted in direct infringement of the '548 Patent, and knew or were willfully blind that its actions would induce direct infringement by others and intended that its actions induced direct infringement by others.

85.    U-blox actively induces such infringement by, among other things, providing product manuals and other instruction materials for its device that induce its unlicensed customers to use u-blox's devices in their normal and customary way to infringe the '548 Patent.  For example, u-blox's website touts that "LTE Cat 6 is part of the LTE-Advanced standard, bringing higher speeds and more capacity to LTE networks around the world" and that at least the TOBY L4 series supports LTE Category 6.[5]  U-blox also touts that "[c]arrier aggregation plays a fundamental role in particular when the mobile device operates in a congested network and therefore the available band is shared among many devices."  Through its manufacture and sale of these and other 4G devices supporting LTE Category 6, u-blox specifically intended for its unlicensed customers to infringe the '548 Patent.  Further, u-blox was aware that these normal and customary activities would infringe the '548 Patent.  U-blox performed the acts that constitute induced infringement, and that would induce actual infringement with knowledge of the '548 Patent and with the knowledge or willful blindness that the induced acts would constitute direct infringement.

86.    Accordingly, on information and belief, u-blox specifically intended for others, such as its unlicensed customers, to directly infringe one or more claims of the '548 Patent in the United States because u-blox had knowledge of the '548 Patent and actively induced others (e.g., its customers) to directly infringe the '548 Patent by using, selling, or offering to sell u-blox's 4G LTE Category 6 devices.

---

[5] https://www.u-blox.com/sites/default/files/ProductCatalog_V22_2019Feb.pdf.

-41-

87.     U-blox has been and is now indirectly infringing at least one claim of the '548 Patent in accordance with 35 U.S.C. §271(c) in this district and elsewhere in the United States.  U-blox has been and is now providing non-staple articles of commerce to others for use in an infringing system or method with knowledge of the '548 Patent, and with knowledge that the use of its products results in a direct infringement of the '548 Patent by its unlicensed customers, and with knowledge that these non-staple articles of commerce are used as a material part of the claimed invention of the '548 Patent.

88.     U-blox's devices supporting 4G LTE Category 6 contain components including an application processor and a baseband processor specifically designed and/or configured to support communication and transmission of data over 4G LTE networks supporting carrier aggregation.  Without these components, u-blox devices supporting 4G LTE Category 6 would not function as designed and intended, such as to send and/or receive data over 4G LTE networks supporting carrier aggregation.  It is reasonable to infer that these components in u-blox devices are especially made or especially adapted to operate in the accused devices to provide wireless communications and the transmission of data in accordance with the 4G LTE Category 6 standard.  Further, it is reasonable to infer that these components are intended to support the communication of data over a 4G LTE network supporting carrier aggregation and are not staple articles or commodities of commerce.  The use of these components is required for operation of the devices to communicate data over a 4G LTE network supporting carrier aggregation.

89.     The components of an application processor and baseband processor designed and/or configured to support the communication of data using a 4G LTE network with carrier aggregation in u-blox devices are each a material part of the invention of the '548 Patent and are especially made for the infringing manufacture, sale, and use of u-blox accused devices.  U-blox's accused devices

-42-

1  including these components are especially made or adapted to infringe the '548
2  Patent, and have no substantial non-infringing uses.

3      90.    U-blox's infringement of the '548 Patent has damaged IDPH and u-
4  blox is liable to IDPH in an amount to be determined at trial that compensates
5  IDPH for the infringement which, by law, can be no less than a reasonable royalty.

6      91.    On information and belief, u-blox's infringement of the '548 Patent
7  has been, and continues to be, willful, deliberate, and egregious by continuing its
8  acts of infringement after becoming aware of the '548 Patent and its infringement
9  thereof.  As result, IDPH is entitled to enhanced damages and to an award of
10  attorneys' fees and costs in prosecuting this action.

11              **PRAYER FOR RELIEF**

12      Wherefore, InterDigital respectfully requests that Plaintiffs take nothing by
13  their Complaint, and that the Court:

14          a.  Deny all relief and/or remedies requested by Plaintiffs;

15          b.  Grant the relief requested in InterDigital's Counterclaims;

16          c.  Enter declaratory judgments that:

17              i.    InterDigital did not breach FRAND commitments with respect
18  to u-blox concerning 2G, 3G, and 4G standards-essential patents;

19              ii.   InterDigital satisfied any FRAND commitments with respect to
20  u-blox concerning 2G, 3G, and 4G standards-essential patents;

21              iii.  Any FRAND commitments of InterDigital with respect to u-
22  blox concerning 2G, 3G, and 4G standards-essential patents have been discharged;

23              iv.   InterDigital negotiated in good faith with u-blox;

24              v.    Counterdefendants failed to negotiate in good faith with
25  InterDigital;

26              vi.   Counterdefendants are unwilling licensees;

27              vii.  Counterdefendants engaged in hold-out behavior; and

28

-43-

viii.    Counterdefendants are not entitled to the benefit of InterDigital's FRAND commitments.

d.  Award damages sufficient to compensate InterDigital for u-blox's breach of the obligation to negotiate in good faith;

e.  Order and adjudge that Counterdefendants are liable for infringement, contributing to the infringement, and/or inducing the infringement of one or more claims of the '876 patent and the '548 patent (the "Patents-in-Suit"), as alleged herein;

f.  Order and adjudge that such infringement is willful;

g.  Order payment of an ongoing royalty pursuant to 35 U.S.C. § 283;

h.  Award damages adequate to compensate InterDigital for the infringement of the Patents-in-Suit that has occurred, in accordance with 35 U.S.C. § 284, including pre-judgment and post-judgment interest at the highest rates allowed by law;

i.  Order an accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through final judgment;

j.  Award attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

k.  Enter judgment in favor of InterDigital and against Plaintiffs and Counterdefendants, assessing the costs of this action and attorneys' fees against Plaintiffs and Counterdefendants; and

l.  Award InterDigital such other and further relief as the Court may deem just and proper.

Dated: May 3, 2019                    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

By:   _/s/ David S. Steuer_____

-44-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David S. Steuer
dsteuer@wsgr.com
Michael B. Levin
mlevin@wsgr.com
Maura L. Rees
mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300

Lucy Yen
lyen@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800

Natalie J. Morgan
nmorgan@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, California 92130-3002
Telephone:   (858) 350-2300

*Counsel for Defendants and Counterclaim
Plaintiffs InterDigital, Inc., InterDigital
Communications, Inc., InterDigital
Technology Corporation, InterDigital
Patent Holdings Inc., InterDigital Holdings,
Inc., and IPR Licensing, Inc.*

-45-